**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Leonard Brady JACKSON, Defendant–Appellant.**

**No. 89–6118.**

United States Court of Appeals, Tenth Circuit.

May 22, 1990.

**1314**

Robert G. McCampbell, Asst. U.S. Atty., (Robert E. Mydans, U.S. Atty., with him on the brief), Oklahoma City, Okl., for plaintiff-appellee.

Susan M. Otto, Asst. Federal Public Defender, Oklahoma City, Okl., for defendant-appellant.

Before HOLLOWAY, Chief Judge and McWILLIAMS, Circuit Judge, and BRATTON, Senior District Judge.*

BRATTON, Senior District Judge.

On September 7, 1988, the defendant, Leonard Brady Jackson, entered a plea to a superseding information for possession of ammunition after former conviction of a felony, a violation of 18 U.S.C. § 922(g)(1).[1] The sentencing judge, noting the defendant's extensive criminal history, sentenced the defendant to the statutory maximum of five years incarceration. The sentencing standards employed by the judge were those provisions extant prior to the guidelines promulgated by the United States Sentencing Commission under 28 U.S.C. § 994(a)(1) [the "guidelines"]. At the time of sentencing, the district court was of the view that the guidelines were unconstitutional and, accordingly, sentenced Jackson pursuant to the pre-guidelines standards.

Jackson appealed the pre-guidelines sentence and secured a remand based upon the decision in *Mistretta v. United States,* 488 U.S. 361, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989), rendered in the interim. On March 31, 1989 defendant Jackson came before the sentencing judge for a second sentencing. Again noting the severity of the defendant's criminal history, the judge departed upward from the guideline range applicable to Jackson[2] and resentenced the defendant to the maximum of five years incarceration.

Jackson now appeals the reimposition of the five year sentence. He argues, first, that his guidelines sentence exposes him to harsher parole and good time provisions than the initial non-guidelines sentence, the effect of which is to increase his punishment in violation of the Double Jeopardy

---

* Honorable Howard C. Bratton, Senior United States District Judge for the District of New Mexico, sitting by designation.

1. Jackson was initially charged in a three count indictment for the possession of four firearms, the possession with intent to distribute approximately one gram of cocaine, and the possession of ammunition by a felon.

2. Jackson qualified as a Category III offender subject to a guideline range of four to ten months incarceration.

Clause. Second, Jackson submits that an upward departure from the applicable guidelines range was not warranted and unreasonable in magnitude. We affirm.

## I. DOUBLE JEOPARDY

Jackson contends that the Double Jeopardy prohibition against "multiple punishments for the same offense," *see Jones v. Thomas,* — U.S. —, —, 109 S.Ct. 2522, 2525, 105 L.Ed.2d 322 (1989), is traduced by the sentencing judge's imposition of the second sentence. Though both sentences assess the same statutory maximum penalty of five years, Jackson contends that the sentence imposed under the guidelines unconstitutionally increases his punishment because of its provisions prohibiting or decreasing such variables as parole, good time, and meritorious work performance credit.

We begin by assuming, *arguendo*, that an imposition of a guidelines sentence in this instance *a fortiori* levels a more severe punishment upon Jackson than the original pre-guidelines sentence, *see, e.g., United States v. Bello,* 767 F.2d 1065, 1068 (4th Cir.1985). Despite the assumed increase in punishment, Jackson's double jeopardy theory does not square with the prevailing precedent of the Supreme Court and this circuit.

*United States v. DiFrancesco,* 449 U.S. 117, 137, 101 S.Ct. 426, 437, 66 L.Ed.2d 328 (1980), established that the relevant double jeopardy criterion involves an inquiry into the defendant's "legitimate expectation of finality in his original sentence," a standard consistently reaffirmed above. *See Jones v. Thomas,* 109 S.Ct. at 2526; *Pennsylvania v. Goldhammer,* 474 U.S. 28, 30–31, 106 S.Ct. 353, 353–54, 88 L.Ed.2d 183 (1985). Thus, there is no intrusion upon the values protected by the Fifth Amendment's double jeopardy clause by increasing the sentence of a criminal defendant if the defendant's expectation in the finality of the original sentence was illegitimate.

In *DiFrancesco* and *Goldhammer,* it was held that criminal defendants whose sentences were appealable by the government under a statutory provision allowing for such appeals, could acquire no reasonable expectation in the finality of their original sentence, at least not until the time for appeal had expired. *DiFrancesco,* 449 U.S. at 136, 101 S.Ct. at 437; *Goldhammer,* 474 U.S. at 30–31, 106 S.Ct. at 353–54. Consequently, enhancement of such a sentence post-appeal would not offend double jeopardy concerns.

Similarly, we have expressed previously that the constitutional finality attendant to the sentencing process may vary; however, in most cases, a reasonable expectation of finality "has been recognized as co-extensive with the courts' basic sentencing power, extending through the end of the direct appeals and retrial process, limited only by the constitutional finality associated with acquittal on the merits." *United States v. Earley,* 816 F.2d 1428, 1433 (10th Cir.1987) (*en banc*).

The fact that it was Jackson who initiated the appeal of the original pre-guidelines sentence,[3] citing as error the district court's failure to sentence under the guidelines, somewhat undermines his claim that he held a crystallized expectation that his original sentence was final. *See Gauntlett v. Kelley,* 849 F.2d 213, 218–19 (6th Cir. 1988) (harsher resentencing no double jeopardy violation because defendant challenged legality of initial sentence and was on notice that his appeal could lead to a more severe sentence); *United States v. Colunga,* 812 F.2d 196, 198 (5th Cir.) *cert. denied* 484 U.S. 857, 108 S.Ct. 165, 98 L.Ed.2d 120 (1987); *but see United States v. Bello,* 767 F.2d 1065, 1070 (4th Cir.1985) (the fact that defendant initiated the appeal is not a dispositive determinant of defendant's legitimate expectation of finality). However, we rely on a still more basic reason to find that Jackson had no legit-

---

**3.** The appeal was initiated subsequent to the date the United States Supreme Court granted *certiorari* in *Mistretta.*

imate expectation of finality and, accordingly, that Jackson's resentencing comports with double jeopardy concerns.

A defendant can acquire no legitimate expectation of finality in an illegal sentence, because such a sentence remains subject to modification. *See Jones v. Thomas,* — U.S. at ——, 109 S.Ct. at 2531 (Scalia, J. dissenting) *citing Bozza v. United States,* 330 U.S. 160, 67 S.Ct. 645, 91 L.Ed. 818 (1947); *United States v. Arrellano–Rios,* 799 F.2d 520, 524 (9th Cir.1986); *United States v. Edmonson,* 792 F.2d 1492, 1496, n. 4 (9th Cir.1986) *cert. denied* 479 U.S. 1037, 107 S.Ct. 892, 93 L.Ed.2d 844 (1987); *United States v. Crawford,* 769 F.2d 253, 257 (5th Cir.1985), *cert. denied,* 474 U.S. 1103, 106 S.Ct. 887, 88 L.Ed.2d 922 (1986). Under the Supreme Court's recent *Mistretta* decision, Jackson's original sentence was illegally imposed because it was not calculated under the requirements of the Sentencing Reform Act. *See United States v. Kane,* 876 F.2d 734, 737 (9th Cir.) *cert. denied* — U.S. ——, 110 S.Ct. 173, 107 L.Ed.2d 130 (1989) (finding no double jeopardy violation in resentencing pursuant to Sentencing Reform Act after *Mistretta* rendered initial sentencing illegal).

Consequently, Jackson cannot now argue that his legitimate expectation of finality in the original sentence was violated, because he is charged with knowledge that the court lacked the authority to impose the illegal sentence in the first instance. *Id.; see also Bozza,* 330 U.S. at 166, 167, 67 S.Ct. at 649. We, therefore, find that the second imposition of the statutory maximum sentence pursuant to the Sentencing Reform Act, and subject to the Act's qualifications of parole, good time and work performance credit, did not traduce double jeopardy.

## II. DEPARTURE FROM THE GUIDELINE RANGE

The district court sentenced Jackson to a 60–month term of incarceration pursuant to the provisions of the Sentencing Reform Act of 1984. The court departed upward from the calculated range of four to ten months, based upon its conclusion that the

criminal history category did not adequately reflect the seriousness of Jackson's past conduct. Jackson argues that the departure was unwarranted, that the manner of departure was improper, and that the magnitude of the court's upward departure was unreasonable.

Most recently we sanctioned a three-step procedure for reviewing a district court's upward departure from the guidelines. *See United States v. White,* 893 F.2d 276, 277 (10th Cir.1990) *citing United States v. Diaz–Villafane,* 874 F.2d 43 (1st Cir.) *cert. denied,* — U.S. ——, 110 S.Ct. 177, 107 L.Ed.2d 133 (1989), and *United States v. Joan,* 883 F.2d 491, 494–96 (6th Cir.1989). As we explained in *White,* the first step involves a plenary review of the circumstances cited by the district court to determine if they constitute a proper justification for departure. It must be determined that the delineated circumstances reveal a truly "atypical" case, a case wherein aggravating circumstances exist, of a kind, and to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines. *White,* 893 F.2d at 277–78, *citing* 18 U.S.C. § 3553(b).

In step two, we review the factual findings of the district court underlying the departure decision to determine if a sufficient factual basis existed to justify departure. The district court's findings of fact will be overturned only if they are clearly erroneous. *Id.* at 278, *citing* 18 U.S.C. § 3742(e).

If, after completion of these two initial steps, the decision to depart from the otherwise applicable guideline range is upheld, we must, as a final step, study the magnitude of the departure from the suggested range to assure that it is "reasonable" in degree. *Id.* at 278. Considerations factoring into this "reasonableness" review include:

the district court's proffered justifications as well as such factors as: the seriousness of the offense, the need for just punishment, deterrence, protection of the public, correctional treatment, the sentencing pattern of the guidelines, and

the need to avoid unwarranted sentencing disparities.

*Id.*

We have previously determined that we should not lightly overturn the determinations of the sentencing judge concerning the appropriate degree of departure. As we indicated in *White*, such judicial constraint on appeal is appropriate because the Commission is involved in a continual process of writing and rewriting the guidelines, and implementing progressive changes; therefore, deference to the trial judge's determination is appropriate especially at this early stage in the development of the guidelines. *Id.* at 279; *see also Joan, supra*, 883 F.2d at 496. Further, we agree with the First Circuit that appellate review of lower court sentencing decisions must occur with full awareness of, and respect for, the sentencing judge's superior "feel" for the case. *See Diaz–Villafane*, 874 F.2d at 48–49.

In reviewing the case at hand under the foregoing analysis, the first step requires that we examine the circumstances cited by the district court to determine if they constitute a proper justification for departure. Departure in the instant case was expressly predicated upon § 4A1.3 of the United States Sentencing Commission, *Guidelines Manual*, at 4.9 (Nov.1989) [hereinafter U.S.S.G.], which authorizes departure when "reliable information indicates that the criminal history category does not adequately reflect the seriousness of the defendant's past criminal conduct or the likelihood that the defendant will commit other crimes...." We note now the reasons set out by the lower court for departure.

First, the sentencing judge made reference to the fact that Jackson had a number of criminal convictions which escaped being counted in the criminal history calculation because of their age. A 1967 forgery con

viction, a 1969 robbery by assault conviction (which occurred within two years after release on the forgery sentencing), and a two count conviction for the sale of heroin in 1975 were excluded from the calculation because they fell outside the guidelines' applicable time period for calculating prior sentences. U.S.S.G., § 4A1.2(e), at 4.6.[4] Appurtenant to the time-barred 1975 conviction for the sale of heroin, specific mention was also made at the sentencing hearing to the fact that Jackson had actually sold heroin to undercover officers on five occasions, yet was only charged with two counts.

However, the criminal history category was not considered under-representative solely because many of Jackson's convictions evaded formal calculation due to their age. The judge also emphasized that Jackson was convicted in 1983 for shooting with intent to kill three separate individuals. For this multiple-count conviction, only three points were added to Jackson's criminal history score. The district court found that this further skewed the computation of an already under-representative criminal history, stating that the single three-point enhancement of Jackson's criminal history score failed to reflect that Jackson's crime involved three victims.

Next, implicit recognition was given by the judge to what he evidently considered to be a somewhat lenient sentence with respect to the three-count shooting with intent to kill conviction. The judge noted that Jackson served the sentences imposed for this conviction concurrently.

Finally, the judge appears to have partially justified the upward departure based upon the type of substantive offenses in which Jackson was characteristically involved, noting that Jackson had a history of both drug convictions and crimes of violence. Based upon all the foregoing

---

4. Section 4A1.2(e) provides in material part:
**Applicable Time Period**
(1) Any prior sentence of imprisonment exceeding one year and one month that was imposed within fifteen years of the defendant's commencement of the instant offense is counted. Also count any prior sentence of imprisonment exceeding one year and one

month, whenever imposed, that resulted in the defendant being incarcerated during any part of such fifteen-year period.
(2) Any other prior sentence that was imposed within ten years of the defendant's commencement of the instant offense is counted.

factors, Jackson's criminal history was labeled so "egregious and serious" as to warrant a departure above even the level of a Category VI criminal offender.

■ We assess whether the grounds for departure were appropriate *in seriatim.* First, we find no error in the sentencing court's consideration, for departure purposes, of Jackson's 1967, 1969, and 1975 convictions and the circumstances appurtenant to them, even though these convictions all fell outside the applicable time limit for calculation of Jackson's criminal history score. According to the judge, the consideration of these factors merely buttressed his determination that criminal activity was Jackson's "continuous course of conduct." Jackson's calculated criminal history score under the guidelines did not accurately reflect a defendant who has shown himself to be, in reality, a recidivous criminal.

In *U.S. v. Fisher,* 868 F.2d 128 (5th Cir. 1989), upward departure was endorsed based upon a criminal history score similarly inadequate to reflect the high risk of the defendant's recidivism. The district court, in justifying its departure, stated, "It [the criminal history score] doesn't take into consideration your earliest conviction because of the 15–year rule, and yet there has been a continuous series of convictions." *Id.* at 129–30. The court of appeals affirmed the district court's upward departure to the statutory maximum sentence stating, "Considering [the defendant's] record, the sentence imposed by the district court was reasonable. Indeed, the district court was justified in concluding that the only reliable way to keep Fisher from driving stolen trucks is to keep him in prison." *Id.* at 130. *See also United States v. Lopez,* 871 F.2d 513, 515 (5th Cir.1989) (district court's finding that zero was not representative of defendant's true criminal history was justified in that defendant's convictions were "barely outside the ten-year limit of 4A1.2(e)(2)"); *United States v. Simmons,* 1989 WL 151665, 1989

U.S. Dist. LEXIS 14930, at 4 (S.D. Fla. Aug. 11, 1989) (criminal history of defendant, a "lifelong violent offender," was under-representative because no sentences older than 15 years were counted).

In addition to the above-noted decisions, various other courts have considered past crimes of defendants, without emphasis on the dates of their commission, when such retrospective glances revealed definite patterns of criminal activity by a defendant. *See, for example, United States v. Campbell,* 888 F.2d 76, 79 (11th Cir.1989) (nine separate crimes, committed from age seventeen to age thirty-one, indicate "likelihood of recidivism" even though such indication was not reflected in criminal history); *United States v. Roberson,* 872 F.2d 597, 606 (5th Cir.) *cert. denied* —— U.S. ——, 110 S.Ct. 175, 107 L.Ed.2d 131 (1989) (almost continuous incarceration since age seventeen for various felony convictions bespeaks propensity for future criminal conduct); *United States v. Coe,* 891 F.2d 405, 411–12 (2d Cir.1989) (merely adding three points for escapee's commission of crime within two years of release from imprisonment for prior offense did not adequately reflect escapee's pattern of robbery).

The Sentencing Commission itself opines, "To protect the public from further crimes of the particular defendant, the likelihood of recidivism and future criminal behavior must be considered. Repeated criminal behavior is an indicator of a limited likelihood of successful rehabilitation." U.S.S.G., Introductory Commentary to Chapter Four, at 4.1.[5] Consequently, we find that consideration of the prior convictions occurring outside the applicable time limitations provided for in the guidelines were appropriately considered when assessing whether the risk of recidivism was represented by the defendant's calculated criminal history score.

■ Next, we address the propriety of the second basis for departure given by the sentencing judge. The judge expressed dissatisfaction with the criminal history

5. In addition, the Guidelines expressly note that the range of information that may be considered at sentencing is "broader than the range of information upon which the applicable sentencing range is determined." U.S.S.G. § 1B1.3, Background to Commentary, at 1.20.

score because it failed to reflect the gravity of a prior multi-count conviction for shooting with intent to kill, involving three separate victims. Consideration of this conviction caused the defendant's criminal history score to be raised by three points—the same point enhancement that would have occurred had only one victim been involved. *See* U.S.S.G. § 4A1.1(a).

No direct guidance is readily apparent under the guidelines supporting or decrying such a basis for departure; yet, one would be hard pressed, we believe, to rebut the district court's implicit finding that Jackson's "criminal history category does not adequately reflect the seriousness of the defendant's past criminal conduct," when such a criminal history in no manner accounts for two of three victims wounded in a violent onslaught by a defendant. *See* U.S.S.G. at § 4A1.3, at 4.9.

Scenarios involving multiple count indictments receive particularized treatment in the guidelines manual, but only with respect to resolution of the proper "offense level" on a multiple count indictment. *See* U.S.S.G., Chapter Three, Part D, at 3.11–3.-24. In this regard, we note with interest that multiple count indictments involving the *same victim* are often combined in determining the appropriate offense level, *see* U.S.S.G. at § 3D1.2, although such is usually not the case if several victims are involved:

> A primary consideration in this section is whether the offenses involve different victims. For example, a defendant may stab three prison guards in a single escape attempt. Some would argue that all counts arising out of a single transaction or occurrence should be grouped together even when there are distinct vic-

tims. Although such a proposal was considered, it was rejected because it probably would require departure in many cases in order to capture adequately the criminal behavior.

U.S.S.G. at § 3D1.2, Background to Commentary, at 3.17.

Analogously, when assessing the adequacy of the criminal history of a defendant based, in part, upon a prior conviction involving multiple counts against different victims, a single three-point enhancement of the defendant's criminal history score fails to "capture adequately the [past] criminal behavior" of a defendant. Therefore, we find no error in the district court's second ground for departure.

■ Little more need be said concerning the court's third ground for departure—the leniency of a past sentence imposed on the defendant—than to note that the guidelines envision and courts have sanctioned departure when a lenient sentence has been given for a past serious offense. *See* U.S.S.G. § 4A1.3, Background to Commentary, at 4.10. *See also United States v. Joan*, 883 F.2d 491, 495, 496 (6th Cir.1989); *United States v. Simmons, supra*, 1989 WL 151665, 1989 U.S. Dist. LEXIS 14930, at 3 (noting sentences served concurrently).

■ Finally, we address the court's fourth basis for departure—the similarity between Jackson's present and past criminal offenses. In the course of the sentencing judge's colloquy, he noted:

> "... I think I have probably mentioned this previously when you appeared before me, but just the fact of the possession of a few bullets in and of itself does not seem that serious.[6]

---

**6.** At the first sentencing hearing the judge stated:

> [Y]ou have just been out of prison for less than two years and you were caught in possession of ammunition.
>
> And, really, more serious to me is the drug paraphernalia and drugs. That's just a terrible combination. And when you combine that with your prior record, it's just something that Society needs to be protected from.

Obviously, the sentencing judge contemplated departure based partially upon Jackson's possession of cocaine when arrested in this matter and

its relation to present and past offenses. For purposes of departure, consideration by the lower court of the superseded drug charge was not error. It is not inappropriate for a sentencing judge to consider reliable information concerning unindicted or uncharged criminal conduct related to the present offense in his decision to depart, even though charges for such conduct have been superseded by subsequent indictment or information or dismissed pursuant to a plea agreement. *See* U.S.S.G. § 1B1.4, Background to Commentary at 1.21–1.22; *United States v. Correa-Vargas*, 860 F.2d 35, 39–40 (2d Cir.1988);

But, as you well know, when you couple it with your history, it becomes quite serious....

I don't think the guidelines adequately considered the fact that you have both a history of violence and a history of drug-related offenses."

R. Vol. II, at 10, 12.

The guidelines do not factor within the criminal history computation any variable to account for the similarity of a defendant's prior criminal conduct to the present offense(s). To the contrary, "§ 4A1.3 permits information about the ... similarity of past conduct underlying prior convictions to be used as a basis for imposing a sentence outside the applicable guideline range." U.S.S.G. § 4A1.1, Background to Commentary, at 4.4. Indeed, as the court in *United States v. DeLuna–Trujillo*, 868 F.2d 122 (5th Cir.1989), stated:

"[P]rior similar adult criminal conduct" may indicate the seriousness of the past crimes and the likelihood of future crimes whether or not it has resulted in conviction. The recidivist's relapse into the same criminal behavior demonstrates his lack of recognition of the gravity of his original wrong, entails greater culpability for the offense with which he is currently charged, and suggests an increased likelihood that the offense will be repeated yet again.

*Id.* at 125. *See also Fisher, supra,* 868 F.2d at 129–30; *Joan, supra,* 883 F.2d at 495.

Jackson's present conviction comprises at least the fifth weapons related offense in Jackson's past. Jackson's one prior drug conviction was a multi-count conviction which, itself, failed to account for three heroin transactions completed by Jackson.[7] We find that the similarity of Jackson's present conduct to recurrent past reprehen-sible behavior is an appropriate departure criterion.

In summation, we find no error in the district court's consideration of the factors noted above in its decision to depart. We turn now to the second step in the analysis, a consideration of the factual basis underlying the court's departure decision.

The factual basis for the findings by the district court is not in dispute. The defendant did not contest the factual accuracy of the presentence report from which the judge made his findings, even though adequate opportunity to do so was given at the sentencing hearing, nor did the defendant tender any evidence on his own behalf at either of the sentencing hearings. *See United States v. Kikumura,* 706 F.Supp. 331, 342 (D.N.J.1989). Consequently, we hold that the trial court was not clearly erroneous in its factual conclusions drawn from the presentence report to justify departure.

■ Lastly, we must review the court's departure to determine if it is reasonable in magnitude. We have previously indicated that any upward departure from an applicable guideline sentence, when based upon criminal history facts, should be made with reference to "a higher ... criminal history category, as applicable." *White,* 893 F.2d at 280, *citing* U.S.S.G. § 4A1.3, at 4.9–4.10. However, as it is expressly contemplated in the guidelines:

[T]here may, on occasion, be a case of an egregious, serious criminal record in which even the guideline range for a Category VI criminal history is not adequate to reflect the seriousness of the defendant's criminal history. In such a case, a decision [to depart] even above the guideline range for a defendant with

---

*United States v. DeLuna–Trujillo,* 868 F.2d 122, 124 (5th Cir.1989).

**7.** Some of the past weapons violations and the drug-related offense occurred outside the applicable fifteen- or ten-year time period of U.S.S.G. § 4A1.2(e)(2). However, they may be considered. The guidelines provide that if the present offense is similar to past criminal con-duct, even past conduct which falls outside the applicable time period of § 4A1.2(e), the court may consider the information about the time-barred conviction in determining whether to depart and sentence above the applicable guide-line range. U.S.S.G. § 4A1.2, Commentary Application Note 8, at 4.8.

a Category VI criminal history may be warranted.

U.S.S.G. § 4A1.3, at 4.10.

In the instant case, Jackson's criminal history score placed him in Category III. After identifying the aggravating factors underlying his departure grounds, the sentencing judge expressly made a finding that Jackson's criminal history exhibited an "egregious and serious criminal record" and imposed the maximum statutory penalty. This sentence leaps well over categories IV, V, and VI in its severity.

A departure of such a magnitude, while not unprecedented [8], does give some pause. Yet, a strong case for departure is presented here, and we note the language of the First Circuit in *Diaz-Villafane*, wherein a departure of like degree was affirmed:

> Although "there appears to be some inherent tension in the guidelines themselves as to the extent to which departure is permissible," ... we read the Guidelines as envisioning considerable discretion in departure decisions, at least at this early stage of their existence.... Although we are cognizant that departures should be the exception rather than the rule, ... we must nonetheless defer, within broad limits, to the trial judge's intimate familiarity with the nuances of a given case.

874 F.2d at 52 (citations omitted).

Further, we may assay the "reasonableness" of the degree of departure by considering more than merely the departure criteria delineated by the district court. Another factor relevant to our review under the reasonableness standard is the need to avoid unwarranted sentencing disparities. *See, supra,* at 1316–1317. In this case, Jackson, by virtue of a very favorable plea arrangement, avoided being charged as a career criminal under 18 U.S.C. § 924(e)(1). Upon conviction of the charge to which Jackson pleaded guilty, and upon the filing of an information alleging two prior felony

drug or crime of violence convictions, Jackson's minimum sentence would have been fifteen years without parole. Under another scenario, if Jackson had pleaded guilty to a drug felony, he would have been classified as a career offender pursuant to U.S.S.G. § 4B1.1, mandating a minimum 210–month incarceration period. Slavish adherence to the proposed guidelines sentence of four to ten months would, in this context, create a great discrepancy in the severity of punishment meted out to career criminals for conduct comparable to the conduct in which Jackson was engaged in the instant case. *Accord United States v. Campbell,* 888 F.2d 76, 79 (11th Cir.1989); *United States v. Correa–Vargas,* 860 F.2d 35, 39–40 (2d Cir.1988).

Consequently, we find the stated criteria undergirding the lower court's departure decision, and the need to preserve the uniformity in sentencing, amply supportive, not only of the lower court's penultimate decision to depart, but, ultimately, of the decreed magnitude of departure as well. A departure in this case, even of this magnitude, was not unreasonable. Accordingly, the district court's disposition of this case is AFFIRMED.

---

**8.** *See, for example, United States v. Diaz–Villafane,* 874 F.2d 43, 48 (1st Cir.1989) (departure from a Category I range of 27–33 months to the statutory maximum 120 months, two times the maximum Category VI range); *United States v. Correa–Vargas,* 860 F.2d 35 (2d Cir.1988) (departure from Category I range of 6–12 months to statutory maximum of 48 months); *United States v. Guerrero,* 863 F.2d 245, 247 (2d Cir.1988) (departure from a Category I range of 6–12 months to 63 months).