UNITED STATES of America,
Plaintiff/Appellee,

v.

Richard Frank GARDNER,
Defendant/Appellant.

No. 89–6289.

United States Court of Appeals,
Tenth Circuit.

June 18, 1990.

Susan M. Otto, Asst. Federal Public Defender, Oklahoma City, Okl. (Rand C. Eddy, Asst. Federal Public Defender, Oklahoma City, Okl., with her on the brief) for defendant/appellant.

Teresa Black, Asst. U.S. Atty., Oklahoma City, Okl. (Timothy D. Leonard, U.S. Atty., Oklahoma City, Okl., with her on the brief) for plaintiff/appellee.

Before McKAY, BARRETT, and EBEL, Circuit Judges.

EBEL, Circuit Judge.

Defendant Richard Frank Gardner pled guilty to bank robbery by force and aiding and abetting the commission of a bank robbery in violation of 18 U.S.C. §§ 2 & 2113. On August 11, 1989, the district court sentenced defendant to 210 months of incarceration. In arriving at that sentence, the district court made an upward departure from the applicable range under the United States Sentencing Guidelines because it found that criminal history category—

ry VI did not reflect the seriousness of defendant's past criminal conduct. Defendant appeals, arguing that the departure was unreasonable because the district court improperly considered convictions which fell outside the fifteen-year limit suggested by the guidelines. We affirm.

## FACTS

Defendant was charged in an eight-count indictment after robbing a credit union and a savings and loan in March and April 1989 respectively. During the robberies, defendant displayed a revolver. Defendant pled guilty to the two counts in the indictment described above, and the remaining counts were dismissed.

In determining defendant's criminal history category for sentencing purposes, the following convictions were considered: a 1974 conviction for attempted robbery with firearms (45–year sentence); a 1982 conviction for carrying a firearm after being convicted of a felony (5–year sentence); a 1985 conviction for five counts of theft (1 to 5–year sentence served concurrently); and a 1986 conviction for possession of a firearm after being convicted of a felony (18–month sentence). Defendant received three criminal history points for each conviction. Defendant received two additional criminal history points because he committed the instant offense while on parole from a state conviction and one additional point because he committed the instant offense within two years of being released from federal custody. Therefore, defendant had a total of fifteen criminal history points, resulting in a criminal history category of VI.

Defendant had several additional convictions that were not considered in calculating his criminal history category because they were more than fifteen-years old.[1] The prior convictions include a 1951 conviction for two cases of armed robbery (1 to 15–year sentence for each count served

---

[1] The sentencing guidelines state that prison sentences imposed more than fifteen-years prior to the defendant's commencement of the offense for which the defendant is being sentenced which did not result in the defendant being incarcerated within the fifteen years should not be counted in determining defendant's criminal history category. *See* Sentencing Guidelines, §§ 4A1.2(e), 4A1.1(a) application note 1.

concurrently), and a 1961 conviction on two counts of bank robbery (19–year sentence on each count to be served concurrently).[2]

Defendant's offense level was twenty-four. Under the sentencing guidelines, a defendant with a criminal history category of VI and offense level of twenty-four would be sentenced within a guideline sentencing range of 100–125 months.

However, in light of the 1951 and 1961 robbery convictions which were similar to the offense for which defendant was being sentenced, the district court departed from the applicable guideline range. At the sentencing hearing, the district court stated:

> I do think, in your case, a departure upward is warranted based upon your criminal history. And, specifically, the convictions which I mentioned previously that are older than fifteen years, but are similar in nature to the offense for which you are before the Court today.
>
> I just don't think the criminal history adequately reflects that. And I take into consideration those prior offenses, those ones I mentioned.
>
> I think it's appropriate that you come within the lower end of the range under the career offender provision. And I think it's appropriate, and I've never said this before, but I think it's appropriate that you spend the remainder of your years in prison.

Tr. at 11–12 (transcript of August 11, 1989 sentencing hearing). The 210–month sentence imposed by the district court is nearly double what defendant could have received under the applicable guideline range of 100–125 months. Defendant appeals from the district court's decision to depart from the guidelines.

## DISCUSSION

■ When reviewing an upward departure from the guidelines, we employ a three-part test. *See United States v. White*, 893 F.2d 276, 277–78 (10th Cir.1990). First, we determine de novo whether the district court has articulated circumstances

which warrant departure and which were not adequately considered by the Sentencing Commission in formulating the guidelines, or if considered by the Commission, that a departure was invited by the guidelines. *Id.* at 278. Second, we determine whether the factual findings underlying the sentencing court's decision were clearly erroneous. *Id.* Finally, 18 U.S.C. § 3742(e)(3) requires us to determine whether the degree of departure was "reasonable." *Id.* These three factors discussed in *White* are considered below.

I. *Whether the district court identified circumstances warranting departure.*

■ The sentencing court can depart from the guidelines only if it "finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." 18 U.S.C. § 3553(b). The aggravating circumstances articulated by the district court in this case were defendant's 1951 and 1961 convictions for robbery, which were not considered in calculating defendant's criminal history category. Tr. at 4–5, 11–12.

The sentencing guidelines permit a departure from the guidelines where the assigned criminal history category does not adequately reflect the defendant's criminal past because convictions beyond the fifteen-year limitation were not considered. The guidelines state that:

> If reliable information indicates that the criminal history category does not adequately reflect the seriousness of the defendant's past criminal conduct or the likelihood that the defendant will commit other crimes, the court may consider imposing a sentence departing from the otherwise applicable guideline range. Such information may include, but is not limited to, information concerning:
>
> (a) prior sentence(s) not used in computing the criminal history category (*e.g.*,

---

**2.** Defendant had other criminal convictions that fell outside the fifteen-year limit. However, because the district court only relied on the 1951 and 1961 robbery convictions as grounds for departure, we will not list the additional convictions which fell outside the fifteen-year limit.

sentences for foreign and tribal offenses).

Sentencing Guidelines, § 4A1.3. Additionally, Comment 8 of the commentary on § 4A1.2 provides that "[i]f the government is able to show that a sentence imposed outside [the fifteen-year] time period is evidence of similar misconduct[,] . . . the court may consider this information in determining whether to depart and sentence above the applicable guideline range." Sentencing Guidelines, § 4A1.2 comment 8. Comment 8 does not require a showing of egregiousness but merely requires that the government show that the prior convictions are evidence of similar misconduct in order for the court to consider the convictions in determining whether to depart.

The district court clearly articulated its ground for departure—the previous robbery convictions more than fifteen-years old which were "similar misconduct" to the offense for which defendant was being sentenced. See Tr. at 5 (The prior convictions "are so similar in nature to the present offense for which you stand before the Court, that I think they should be considered when the Court imposes sentence."). Because the district court clearly articulated its reasons for departure we can review its decision, and we conclude that the existence of these two previous convictions for similar criminal conduct outside of the fifteen-year limit warranted departure. Therefore, the first factor discussed in *White* is satisfied. *See, e.g., United States v. Jackson*, 903 F.2d 1313, 1318 (10th Cir.1990) (available on Westlaw 1990 WL 66595); *United States v. Carey*, 898 F.2d 642, 646 (8th Cir.1990); *United States v. Fisher*, 868 F.2d 128, 130 (5th Cir.), *cert. denied*, — U.S. —, 110 S.Ct. 111, 107 L.Ed.2d 73 (1989).

II. *Whether the district court's factual basis for departure was clearly erroneous.*

On appeal, there is no dispute between the parties as to the material facts underlying the district court's decision. Our review of the record confirms that the district court had a proper factual basis for its sentencing decision. Therefore, the second prong of *White* is satisfied.

III. *Whether the departure sentence was reasonable.*

The final question is whether the degree of departure was reasonable. That inquiry is different from the inquiry under the first prong of *White* which asks if *any* departure is warranted. Once we determine that a departure is warranted, we must then determine whether the *degree* of the district court's departure was reasonable. In *United States v. White*, 893 F.2d 276 (10th Cir.1990), the Tenth Circuit outlined the basic factors to be considered in determining the reasonableness of an upward departure. The court stated that "[t]o determine whether the degree of departure is reasonable, we must consider the district court's proffered justifications as well as . . . the policy statements contained in the Guidelines, and *the need to avoid unwarranted sentencing disparities.*" *White*, 893 F.2d at 278 (emphasis added); *see Jackson*, 1321 ("Another factor relevant to our review under the reasonableness standard is the need to avoid unwarranted sentencing disparities.").

Section 3742(e) of Title 18 provides that: Upon review of the record, the court of appeals shall determine whether the sentence—

. . . .

(3) is outside the applicable guideline range, and is unreasonable, having regard for—

(A) the factors to be considered in imposing a sentence, as set forth in chapter 227 of this title [such factors include, 'the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct,' 18 U.S.C. § 3553(a)(6) ].

18 U.S.C. § 3742. Section 3742(f)(2)(B) then requires that "[i]f the court of appeals determines that the sentence . . . is outside the applicable guideline range and is unreasonable . . . (B) . . . it shall set aside the sentence and remand the case for further

sentencing proceedings...." 18 U.S.C. § 3742(f)(2)(B).

Reasonableness requires that the sentence regard the guideline factors set forth in § 3553, which include factors of uniformity and proportionality. *See* 18 U.S.C. § 3553(a); *see also* Sentencing Guidelines, Ch. 1, Part A, Intro. 3 (setting forth the objectives Congress sought to achieve in enacting the Sentencing Reform Act). Uniformity requires that unwarranted sentence disparities should be avoided as between "defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). Sentencing proportionality requires a sentencing "system that imposes *appropriately* different sentences for criminal conduct of different severity." Sentencing Guidelines, Ch. 1, Part A, Intro. 3 (emphasis added). The principles of uniformity and proportionality are not limited to sentences within the guideline range, but obviously are meant to apply to sentences that depart from the guideline range as well. *See United States v. Ferra*, 900 F.2d 1057 (7th Cir. 1990); *White*, 893 F.2d at 278, 18 U.S.C. §§ 3553(a) and 3742(e) & (f). Although it is more difficult to measure uniformity and proportionality in cases of departure because most departures will be based on unusual or extreme circumstances, we must nevertheless strive, to the extent possible, to evaluate by objective criteria the reasonableness of each departure.

In contrast to the reluctance of appellate courts to review the reasonableness of sentences prior to adoption of the sentencing guidelines, the appellate courts now have a more active role to play to insure adherence to the guidelines' policies of uniformity and proportionality in sentencing. *See* Sentencing Guidelines, Ch. 1, Part A, Intro. 3. Appellate review of sentences was specifically designed by Congress to prevent unwarranted disparities in sentencing. *See* Senate Comm. on the Judiciary, S.Rep. No. 98–225, 98th Cong., 2d Sess. 1, 150–52, *reprinted in* 1984 U.S.Code Cong. & Admin.News 3182, 3333–35 [hereinafter

"S.Rep. No. 98–225"]. "Although Congress did not desire simply to allow the substitution of a decision of the appellate court for that of the sentencing judge, it did want to 'control the exercise of that discretion to promote fairness and rationality, and to reduce unwarranted disparity, in sentencing.'" Wilkins[3], *Sentencing Reform and Appellate Review*, 46 Wash. & Lee L.Rev. 429, 433 (1989) (quoting S.Rep. No. 98–225 at 150, 1984 U.S.Code Cong. & Admin.News 3333.). Giving the sentencing court unfettered discretion "risks a return to the wide disparity that Congress established the Commission to limit. While the guidelines are not mandatory sentencing rules, ... the Act and Guidelines substantially circumscribe the discretion which sentencing courts formally exercised." *United ed States v. Brewer*, 899 F.2d 503, 507 (6th Cir.1990) (quotations omitted).

We cannot evaluate the reasonableness of a particular departure from the guidelines without an adequate factual record, nor can we speculate as to reasoning that might have been employed by the sentencing court to arrive at a particular sentence. The initial task of deciding when and by how much to deviate from the guidelines falls upon the trial court, *see United States v. Diaz–Villafane*, 874 F.2d 43, 49–50 (1st Cir.), *cert. denied*, —— U.S. ——, 110 S.Ct. 177, 107 L.Ed.2d 133 (1989), and the trial court must articulate *its* analysis supporting the degree of departure selected. *See* 18 U.S.C. § 3553(c). Without such an articulation of the trial court's reasoning, we simply are not able effectively to supervise the sentencing process, nor to enforce the principles of uniformity and proportionality implicit in the concept of reasonableness.

In *United States v. Ferra*, 900 F.2d 1057 (7th Cir.1990), the Seventh Circuit explained that:

A judge may not say: 'I have decided to depart, so I now throw away the guidelines.' The guidelines are designed to bring openness and consistency to sentencing, to even out the effects of different judges' perspectives on desert and

---

3. Judge William W. Wilkins, Jr., sits on the United States Court of Appeals for the Fourth Circuit and is Chairman of the United States Sentencing Commission.

deterrence.... Unless there is discipline in determining the amount of departure, however, sentencing disparity will reappear.... But it is possible to formulate approaches that link the extent of departure to the structure of the guidelines. *Id.* at 1061–62.

■ Congress noted that without clear explanation by the sentencing court "the courts of appeals would have difficulty assessing the reasonableness of a sentencing decision since they would be unable to tell in many cases why the sentences in two apparently similar cases were different." S.Rep. No. 98–225 at 150, 1984 U.S.Code Cong. & Admin.News 3333. In 18 U.S.C. § 3553(c), Congress specifically directed the sentencing court to state both the reasoning underlying its decision to depart and the reasoning as to why it selected the particular sentence which was imposed. Section 3553(c) provides:

(c) **Statement of reasons for imposing a sentence.**—The court, at the time of sentencing, shall state in open court the *reasons for its imposition of the particular sentence, and,* if the sentence—

. . . .

(2) is not of the kind, or is outside the range, described in subsection (a)(4), the specific *reason for the imposition of a sentence different from that described.*

18 U.S.C. § 3553(c) (emphasis added). The language of the statute makes it clear that it is not enough to state simply the reasons for a departure from the guidelines; the reasons for the "particular sentence" imposed must also be set forth. *Cf. United States v. Smith,* 888 F.2d 720, 724 (10th Cir.1989) ("Without particularization by the trial court of its reasons for an enhanced sentence, this court cannot engage in the kind of meaningful review intended by § 3742 of the Sentencing Reform Act, which provides that a sentence should be set aside by this court if it departs unreasonably from the Guidelines' recommended

sentence."), *cert. denied,* — U.S. —, 110 S.Ct. 1786, 108 L.Ed.2d 788 (1990).

■ A departure sentence may be "unreasonable" not only if the departure itself is unwarranted but also if the degree of the departure is unwarranted. Thus the district court must articulate not only its reasons for a departure but also its reasons explaining the *degree* of departure leading to the "particular sentence" imposed. *See United States v. Cervantes,* 878 F.2d 50, 54 (2nd Cir.1989); *see also United States v. Allen,* 898 F.2d 203 (D.C.Cir.1990); *United States v. Anderson,* 886 F.2d 215, 216 (8th Cir.1989) (per curiam).

In *United States v. Ferra,* 900 F.2d 1057 (7th Cir.1990), the Seventh Circuit vacated the district court's sentencing decision and remanded the case because the district court had failed to explain how it selected the degree of departure used. The district court had departed from the guideline range of 41 to 51 months and imposed a sentence of 120 months because it concluded that the defendant's criminal history category did not adequately reflect the seriousness of defendant's actual criminal history. The Seventh Circuit vacated the sentence and remanded the case back to the district court because the absence of any rationale supporting the particular 120–month sentence which was imposed prevented the appellate court from determining whether the degree of departure was reasonable.[4]

The district court in the present case adequately articulated the reasoning behind its choice of sentence. The guidelines instruct the court to find a category in which the defendant's criminal history "most closely resembles that of most defendants [within that criminal history category]." Sentencing Guidelines, § 4A1.3 (policy statement). The district court believed that the record supported a finding that the defendant most closely resembled a career offender. At the sentencing hearing, the district court explained:

---

4. *But see United States v. Montenegro–Rojo,* 900 F.2d 1376 (9th Cir.1990); *United States v. Roberson,* 872 F.2d 597, 607–608 (5th Cir.), *cert. de-* *nied,* — U.S. —, 110 S.Ct. 175, 107 L.Ed.2d 131 (1989).

I just don't think the criminal history adequately reflects that. And I take into consideration those prior offenses, those ones I mentioned.

I think it's appropriate that you come within the lower end of the range under the career offender provision.

Tr. at 11–12.

■■■ When the district court has articulated the reasoning underlying how the particular sentence was selected, we then must examine that reasoning to determine whether it reasonably supports the degree of departure ordered in light of the purposes of the sentencing guidelines. In determining whether a departure sentence is reasonable, we will normally look first to see whether the degree of departure is tied to one or more objective criteria. However, because the factual situations warranting departure from the guidelines vary greatly, there is no single formula or rationale that should be used in all instances by the district courts to determine the degree of departure from the guidelines. The district courts and the Commission are best suited to develop a body of rules that could be applied in departing from the guidelines. *See United States v. Diaz–Villafane,* 874 F.2d 43, 49–50 (1st Cir.) ("District courts are in the front lines, sentencing flesh-and-blood defendants."), *cert. denied,* —— U.S. ——, 110 S.Ct. 177, 107 L.Ed.2d 133 (1989). Although formulas of mathematical exactitude are neither required nor possible, the district court should articulate the objective criteria used as a basis for determining the actual sentence imposed. In many instances, this will consist of an extension of or extrapolation from other guideline levels or principles, or use of an analogy to other closely related conduct or circumstances that are addressed by the guidelines.

■ On a case by case basis, we will undoubtedly have the opportunity to consider a variety of rationale that might be used to explain objectively how a particular departure sentence was determined. In this case, the sentencing court stated that it was most appropriate to analogize to the category of career offender. The district judge retains discretion to select an appropriate methodology or rationale to set the enhanced sentence so long as it is not inconsistent with the guideline objectives of uniformity and proportionality. As noted previously, those objectives continue to apply even in departure sentences although, by their very nature, departure sentences will involve more diverse factual situations, and therefore greater diversity will be allowed, than is indicated for sentences within the guidelines. In particular, the criteria to use in departing upward from criminal history category VI will have to evolve under the tutelage of experience.

Where, as here, the departure is premised on the theory that defendant's criminal history category does not adequately reflect his past criminal conduct, the Commission has directed the court to "use, as a reference, the guideline range for a defendant with a higher or lower criminal history category, as applicable." Sentencing Guidelines, § 4A1.3.

There are no criminal history categories greater than category VI. However, the guidelines do allow for the possibility of a sentence above category VI if category VI does not adequately reflect the seriousness of defendant's criminal history. Section 4A1.3 explains that:

> The Commission contemplates that there may, on occasion, be a case of an egregious, serious criminal record in which even the guideline range for a Category VI criminal history is not adequate to reflect the seriousness of the defendant's criminal history. In such a case, a decision above the guideline range for a defendant with a Category VI criminal history may be warranted.

Sentencing Guidelines, § 4A1.3 (policy statement).

In determining the degree of departure in this case, the district court looked to the sentencing guidelines and by analogy determined how defendant would have been sentenced as a career offender. The sentencing criteria for a career offender are as follows:

> A defendant is a career offender if (1) the defendant was at least eighteen years old at the time of the instant of-

fense, (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense, and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense. Sentencing Guidelines, § 4B1.1. Defendant meets the first two criteria of a career offender. Defendant's bank robbery convictions fall within the definitions of a "crime of violence." *See* Sentencing Guidelines, § 4B1.2(1). Defendant only fails the third criteria because he had just one other conviction for a crime of violence within the fifteen-year limit of the guidelines. If either the 1951 or 1961 convictions had occurred within the fifteen-year period, or if the defendant had been incarcerated at any time within the fifteen-year period for either of such convictions,[5] defendant would have been sentenced under the career offender provision of the guidelines. The defendant did have several other convictions within the fifteen-year limit that involved either firearms or theft but none that involved both firearms and theft together. Defendant's criminal history also demonstrates a pattern of criminal conduct that suggests robbery was defendant's chosen profession. The criminal pattern is further evidenced by the similarity between the 1951 and 1961 robbery convictions and the instant robberies for which defendant was sentenced. Therefore, defendant's criminal history closely resembled that of a career offender and the district court's decision to sentence defendant by reference to the career offender provisions was rea-

sonable, particularly where, as here, the district court chose to sentence him to the lower range for a career offender.

CONCLUSION

In sum, we conclude that: (1) the district court articulated a valid reason for its departure from the guidelines, (2) the underlying factual basis of the sentence is not clearly erroneous, and (3) the district court adequately articulated the method used to determine the degree of departure and the degree of departure was reasonable. Therefore, we AFFIRM the district court's August 11, 1989 order imposing a 210–month sentence.

---

**5.** Sentencing Guidelines, 4A1.2(e)(1) specifically instructs the court to count "any prior sentence of imprisonment exceeding one year and one month, whenever imposed, that resulted in the defendant being incarcerated during any part of such fifteen-year period." That would include any sentence which was reinstated as a result of parole revocation and which was being served within the fifteen-year period. Sentencing Guidelines, 4A1.2(k)(2). Here, the district court made a finding that the 1951 and 1961 convictions were not includable under the guidelines in determining the criminal history category. It is apparent from the presentence report that defendant was no longer incarcerated for the 1951 or 1961 convictions during the fifteen-year period preceding his current offense because

the presentence report shows that he was out of jail and committed yet another offense in 1973. Further, the presentence report should list all of defendant's parole revocations, and although it does show at least one parole revocation, there is no showing that either the 1951 or 1961 sentences were ever reinstated as a result of any parole revocation. Nothing else in the record suggests that defendant was incarcerated for either of these convictions at any time during the fifteen-year period preceding the date of his current offense. Finally, both the government and the defendant agreed that these two convictions are not includable in calculating the criminal history points. Thus, we accept the district court's categorization of this sentence as a departure sentence.