**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Brian David ROTH,
Defendant–Appellant.**

**No. 90–4028.**

United States Court of Appeals,
Tenth Circuit.

May 24, 1991.

**250**

Jerold D. McPhee, Salt Lake City, Utah, for defendant-appellant.

Dee V. Benson, U.S. Atty. (Bruce C. Lubeck, Asst. U.S. Atty., with him on the brief), Salt Lake City, Utah, for plaintiff-appellee.

Before HOLLOWAY, Chief Judge, LOGAN, Circuit Judge, and BRETT, District Judge.*

LOGAN, Circuit Judge.

Defendant Brian David Roth appeals his sentence imposed following his plea of guilty to theft of government property, in violation of 18 U.S.C. § 641. On appeal, defendant argues that the district court erred in departing upward from his calculated guideline sentencing range and that he should have received credit for the time he served awaiting disposition of his case.

At the time of his arrest, defendant was a member of the United States Air Force assigned to a security police squadron at Hill Air Force Base, Utah. Defendant's primary duty was to guard the assets stored at the base. In October 1987, defendant began selling military equipment that he had stolen to Military Surplus Brokers, an undercover business set up by the FBI. Over the course of approximately two years, defendant sold a variety of items ranging from helmets and goggles to communication and aviation equipment.

In early 1989, defendant and undercover FBI agents began discussing the sale of four F–16 jet engines stored at Hill Air Force Base. The parties agreed to a sale price of $100,000 per engine. Defendant engaged another military policeman, Danny Stroud, to assist in the theft and sale of the engines. Defendant and Stroud removed three engines from their storage hangar and delivered them to the undercover agents. Defendant and Stroud were arrested several days later.

Defendant pleaded guilty to five counts of theft of government property. His presentence report specified a guideline sentencing range of thirty to thirty-seven months imprisonment—based on a criminal history score of zero, a total loss of $10,043,605 ($9.9 million attributed to the jet engines), a two-level increase for more than minimal planning, a two-level increase for utilizing a position of trust, and a two-level decrease for acceptance of responsibility. See U.S.S.G. §§ 2B1.1(b)(1), 2B1.1(b)(4), 3B1.3 & 3E1.1(a). The sentencing court departed upward from the recommended range, imposing a 120 month sentence. The court also refused to credit defendant's sentence for his predisposition detention.

**I**

Defendant first argues that the district court erred in departing upward from his calculated guideline range because it stated insufficient reasons for departure. Alternatively, defendant argues that the degree of departure is unreasonable.

In reviewing a sentencing court's upward departure from the guidelines, we undertake a three-step review process. *United States v. White*, 893 F.2d 276, 277–78 (10th Cir.1990). First, we consider whether the circumstances cited by the sentencing court justify a departure from the calculated guideline sentencing range. *Id.* at 277. The court may depart only if it

* The Honorable Thomas R. Brett, United States District Judge for the Northern District of Oklahoma, sitting by designation.

"finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." 18 U.S.C. § 3553(b). Second, we must determine "whether the circumstances cited by the sentencing court to justify departure actually exist in the instant case." *White*, 893 F.2d at 278. Finally, we must decide whether the degree of departure is reasonable. *Id.; see also* 18 U.S.C. § 3742(e)(3).

Focusing on the first step of the *White* analysis, the court identified the following circumstances to justify an upward departure from the calculated guideline range:

> "Number 1. The Court finds that the guideline range does not adequately consider the value involved in this theft.
>
> Number 2. That there was a significant disruption of governmental function in that morale and the pride of the military are affected.
>
> Number 3. What appears to the Court to be a lack of concern for the ultimate destination for these engines which could have serious effect upon our national security."

II R. at 34. Defendant contends that these reasons do not justify an upward departure because "all of these items were adequately considered by the Sentencing Commission at the time of the Defendant's offense." Amended Brief of Appellant at 7. Defendant argues that the Commission properly accounted for the circumstances of this case by requiring a two-level increase for an "abuse of trust," U.S.S.G. § 3B1.3, and a thirteen-level increase for theft of items exceeding $5,000,000 in value, *id.* at § 2B1.1(b)(1)(N).

■ A sentencing court may "depart for reasons already considered in the guidelines (i.e., adjustment for specific offense characteristics), 'if the court determines that, in light of *unusual circumstances,*

the guideline level attached to that factor is inadequate.'" *United States v. Dean*, 908 F.2d 1491, 1496 (10th Cir.1990) (quoting U.S.S.G. § 5K2.0) (emphasis added by *Dean* court). In the instant case, the district court determined that the guideline level attached to the value of the theft was inadequate. We agree. The amount involved, $10 million, when compared to the $5 million maximum considered by the guidelines, is sufficiently "unusual" to warrant departure.

■ The two other reasons cited by the district court also are sufficient justifications for an upward departure. U.S.S.G. §§ 5K2.7 and 5K2.14 authorize a sentencing court to depart if the defendant's conduct "resulted in a significant disruption of a governmental function" and "[i]f national security ... was significantly endangered." In the instant case, the court found that the theft's effect on the morale and pride of the military was a significant disruption of governmental function and that the sale could have endangered national security.[1] After reviewing the record, we conclude that these findings are not clearly erroneous and that departure was therefore warranted.

The second step of the *White* analysis— whether the circumstances cited by the sentencing court to justify its departure actually exist—is not at issue in this case. Defendant does not challenge the facts cited by the sentencing court to justify the upward departure. We therefore move to the final step of the *White* analysis and assess whether the degree of departure is reasonable.

■ "Reasonableness requires that the sentence regard the guideline factors set forth in § 3553, which include factors of uniformity and proportionality." *United States v. Gardner*, 905 F.2d 1432, 1436 (10th Cir.), *cert. denied,* — U.S. —, 111 S.Ct. 202, 112 L.Ed.2d 163 (1990). Specifically, in reviewing the sentencing court's degree of departure, we must consider:

---

**1.** The factual basis for the district court's findings appears to be a letter written by Colonel John R. Brancato of the United States Air Force. In his letter, Colonel Brancato described the

seriousness of the theft and the effect it had on the morale of the Security Police Squadron and the entire base. I R. tab 103.

"[T]he district court's proffered justifications as well as such factors as: the seriousness of the offense, the need for just punishment, deterrence, protection of the public, correctional treatment, the sentencing pattern of the Guidelines, the policy statements contained in the Guidelines, and the need to avoid unwarranted sentencing disparities."

*White*, 893 F.2d at 278 (citing 18 U.S.C. §§ 3742(e)(3) & 3553(a)).

■ Although all of the above factors recited in *White* serve as indicia of reasonableness, the sentencing court's "proffered justifications" for the departure is a threshold requirement. *United States v. Jackson*, 921 F.2d 985, 990 (10th Cir.1990) (en banc). "Without specific reasons for the sentence imposed, we cannot exercise our statutory mandate to review the reasonableness of a departure sentence." *Id.* at 989–90. Further, such reasons must be couched in terms of inadequacies in an offense level or criminal history category. "Just as the district court must premise its departure on the Guidelines' deficiency in assigning a defendant a particular offense level, criminal history category, or both, the court also must explain a departure sentence in these terms." *Id.* at 990. Specifically, the sentencing court should draw analogies to offense characteristic levels, criminal history categories, and other principles in the guidelines to determine the appropriate degree of departure. *Id.* at 991.

■ In the instant case, the sentencing court's statements to support its degree of departure did not comport with the standards laid out in *Jackson*. The court's reasons for imposing a 120 month sentence amounted to only a general statement in which it reiterated one of its reasons for departure:

"As one who has been privileged to wear the uniform of the Armed Forces namely the United States Air Force, I am convinced that any sentence less than that which the Court proposes to impose and which I will impose, would have a serious adverse effect, impact upon the pride and morale of our military personnel and the citizenry of this great nation."

II R. at 34–35. Nowhere did the sentencing court draw analogies to the guidelines or explain its sentence in guideline terms. Indeed, the government admits that the court did not present a proper justification for imposing a sentence eighty-three months above the maximum guideline range. Brief of Plaintiff/Appellee at 17.

As we noted in *Gardner*, 905 F.2d at 1436,

"We cannot evaluate the reasonableness of a particular departure from the guidelines without an adequate factual record, nor can we speculate as to reasoning that might have been employed by the sentencing court to arrive at a particular sentence. The initial task of deciding when and by how much to deviate from the guidelines falls upon the trial court, and the trial court must articulate *its* analysis supporting the degree of departure selected. Without such an articulation of the trial court's reasoning, we simply are not able effectively to supervise the sentencing process, nor to enforce the principles of uniformity and proportionality implicit in the concept of reasonableness."

*Id.* (citations omitted) (emphasis in original). Because the sentencing court failed to present proper reasons for its degree of departure in accordance with *Jackson*, we must remand for an explanation of the departure sentence.

■ Defendant also implicitly argues that the sentencing court abused its discretion and violated due process when, by its statements, it "relinquished its role as arbiter and cloaked itself in the mantle of advocate." Amended Brief of Appellant at 12. Defendant cites *United States v. Bakker*, 925 F.2d 728 (4th Cir.1991), as support of this contention. We do not agree that the sentencing court's statements can be equated with those condemned in *Bakker*. In reviewing the sentencing of television evangelist Jim Bakker, the Fourth Circuit was left with the impression "that the imposition of a lengthy prison term … may have reflected the fact that the [sentenc-

ing] court's own sense of religious propriety had somehow been betrayed." *Id.* at 741.[2] Although the instant sentencing judge referred to his own military service, we think that, fairly construed, his statement simply highlighted the seriousness of defendant's offense, *see United States v. Torres*, 901 F.2d 205, 246–47 (2d Cir.1990) (sentencing judge's statement about harm to community resulting from drug dealers' activities properly emphasized seriousness of offense), *cert. denied*, — U.S. —, 111 S.Ct. 273, 112 L.Ed.2d 229 (1990), and reiterated one of its reasons for departure— the theft's adverse effect on the military and the public at large. Thus, we will not hold that the statement violated defendant's due process rights, abused the sentencing court's discretion, or that resentencing should be by a different judge.

## II

Finally, defendant contends that the sentencing court erred in denying him credit for time served while awaiting disposition of his case. Citing *United States v. Woods*, 888 F.2d 653 (10th Cir.1989), *cert. denied*, — U.S. —, 110 S.Ct. 1301, 108 L.Ed.2d 478 (1990), he argues that he should have been given credit for his three month stay at Correction Services Corporation, a federally accredited, level I facility, and that the court's denial contravened its earlier order authorizing the credit.

The credit statute, 18 U.S.C. § 3585(b),[3] provides:

"A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences—

(1) as a result of the offense for which the sentence was imposed...."

"Official detention" means "imprisonment in a place of confinement, not stipulations or conditions imposed upon a person not subject to full physical incarceration." *Woods*, 888 F.2d at 655. The confinement must "equal the deprivation of liberty experienced by a person incarcerated in a jail facility" to warrant a credit for time served. *Id.* at 656. Applying these principles, the *Woods* court held that a defendant was not entitled to credit for time served at a halfway house where he was allowed to participate in a work release program and spend weekends at home. *Id.* at 654, 656. *See also United States v. Insley*, 927 F.2d 185, 186 (4th Cir.1991) (no credit for time on release pending appeal when the defendant was required to seek employment, reside with her parents and leave only for work or church, report regularly to the probation office, be in her residence by 9:00 p.m., execute a bond, be electronically monitored, submit to random drug testing, and stay in touch with her attorney); *United States v. Carlson*, 886 F.2d 166, 166–67 (8th Cir.1989) (no credit for post-trial release for defendant required to report to authorities and travel restricted); *United States v. Figueroa*, 828 F.2d 70, 70–71 (1st Cir.1987) (no credit for time spent on pretrial conditional release).

In the instant case, we are unable to determine whether the district court properly denied defendant credit for the time served awaiting sentencing. A review of the record does not clearly reveal defendant's conditions of confinement.[4] Fur-

---

**2.** The sentencing judge condemned Bakker because "[h]e had no thought whatever about his victims and those of us who do have a religion are ridiculed as being saps from money-grubbing preachers or priests." *Bakker*, 925 F.2d at 740.

**3.** Section 3585 became effective on November 1, 1987, replacing § 3568, which provided that a defendant shall receive "credit toward service of his sentence for any days spent in custody in connection with the offense or acts for which sentence was imposed." *Woods*, 888 F.2d at 654–55. Although § 3568 used the phrase "in

custody" instead of "official detention," Congress did not intend a different result or a departure from the precedents decided under § 3568. *Id.* at 655.

**4.** The only information we have found are references in defendant's brief. Specifically, he contends that his confinement conditions included "24 hour supervision, restriction to the premises, involuntary searches of both his person and his living quarters, random urinalysis and subject to Federal charges should he fail to comply with the terms and conditions of his confinement." Amended Brief of Appellant at 15.

ther, the district court initially ruled that defendant would receive credit for his presentence incarceration. I R.Supp. tab 82.[5] Accordingly, on remand the sentencing court should determine whether defendant must receive credit under *Woods* and our analysis herein.

### III

In conclusion, we VACATE the sentencing court's departure sentence and RE-MAND for resentencing in accordance with our analysis herein. We also direct the sentencing court to reexamine defendant's presentence detention, taking evidence on the conditions of confinement if necessary, to determine if defendant should receive credit for this time served.

---

**5.** At the sentencing hearing, however, the court denied credit for the time served, concluding that "any halfway house time that was served is not considered detention." II R. 36.