**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Arminta Mohundro RUSSELL,**
**Defendant–Appellant.**

**Nos. 89–6142, 89–6219.**

United States Court of Appeals,
Tenth Circuit.

June 20, 1990.

---

Don J. Gutteridge, Jr. of Kerr, Irvine & Rhodes, Oklahoma City, Okl., for defendant-appellant.

Ted A. Richardson, Asst. U.S. Atty. (Timothy D. Leonard, U.S. Atty., with him on the brief), Oklahoma City, Okl., for plaintiff-appellee.

Before LOGAN, SETH and BALDOCK, Circuit Judges.

SETH, Circuit Judge.

Defendant-appellant, Arminta Mohundro Russell, was convicted by a jury on one count of bank fraud, 18 U.S.C. § 1344, two counts of transporting in interstate commerce stolen goods, 18 U.S.C. § 2314, one count of conspiracy to commit fraud, 18 U.S.C. § 371, and two counts of falsely representing her social security number in violation of 42 U.S.C. § 408(g)(2). Pursuant to the United States Sentencing Commission Guidelines (Guidelines), a presentence investigation report was compiled for defendant assigning her at a total offense level of 14 with a criminal history category of VI. Under those calculations, the Guidelines sentencing range was 37 to 46 months. At sentencing, the trial judge departed upward 14 months on the ground that defendant's criminal history category underrepresented her criminal history and the likelihood she would commit further crimes. Defendant was sentenced to 60 months on Counts I, V, VI and X (to run concurrently with each other), 60 months on Counts II and III (to run concurrently with each other but consecutively to the sentence imposed on Counts I, V, VI and X), for a total sentence of 10 years all within the statutory maximums. On appeal, defendant objects to the sufficiency of evidence to support her convictions under 42 U.S.C. § 408(g)(2) and 18 U.S.C. § 2314, the trial court's upward departure and the court's imposition of consecutive sentences. For the reasons discussed below, we affirm.

Defendant was named in a 10–count indictment for numerous charges arising from a scheme in which she fraudulently obtained merchandise using various deceitful tactics. This scheme began on May 20, 1988 when defendant and April Smith drove from Dallas, Texas to Oklahoma City, Oklahoma. Upon arrival, defendant applied for and received an Oklahoma driver's license using a false name and social security number. Later, she opened a commercial bank account in Oklahoma City at Liberty National Bank and Trust using her Oklahoma driver's license, a false name and social security number. Defendant proceeded to go on an expensive shopping spree charging numerous items (100 tires, a Rolex watch, cameracorder, jewelry) to this account. Defendant's checks were later dishonored.

I.

Defendant first contends that the district court erred in denying her motion of acquittal on two counts of violating 42 U.S.C. § 408(g)(2) on grounds of insufficient evidence. In our review of the trial court's denial of defendant's motion of acquittal we must view the evidence and reasonable inferences to be drawn from it in the light most favorable to the government to decide whether there was sufficient evidence from which the jury could find defendant guilty beyond a reasonable doubt. *United States v. Darrell*, 828 F.2d 644 (10th Cir.). Under these standards, we find ample evidence to support defendant's conviction on both counts.

Defendant urges us that she obtained "nothing of value" within the meaning of 42 U.S.C. § 408(g) by providing a

false social security number when she opened her commercial bank account and applied for a driver's license. Defendant's argument is undercut by the clear language of the statute which states, in relevant part:

"Whoever—

. . . .

"(g) ... for the purpose of obtaining anything of value from any person, or for any other purpose—

. . . .

"(2) with intent to deceive, falsely represents a number to be the social security account number assigned by the Secretary to him or to another person, when in fact such number is not the social security account number assigned by the Secretary to him or to such other person;

...

. . . .

"... shall be guilty of a felony...."

42 U.S.C. § 408(g)(2). In this case, a jury could infer that the defendant's use of a false social security number was for the purpose of concealing her true identity, which in turn, allowed her to obtain a driver's license and a commercial bank account. Armed with these items, defendant was able to deceive numerous businesses and obtain valuable merchandise, which she did not pay for. Clearly, this falls within the statutory ambit of 42 U.S.C. § 408(g). *See Darrell,* 828 F.2d 644, 647.

Defendant also contends that the trial court erred in denying her motion for acquittal on one count of transporting in interstate commerce a Rolex watch in violation of 18 U.S.C. § 2314. Defendant urges that the evidence fails to establish that she participated in the actual transportation of the watch in interstate commerce. After reviewing the record, however, we disagree.

■■■ The parties concede there is no direct evidence establishing that defendant transported the watch from Oklahoma to Texas. A criminal conviction, however, can rest on circumstantial evidence. *See United States v. McKinnell,* 888 F.2d 669, 673 (10th Cir.). The evidence in this case shows that defendant purchased a Rolex watch in Oklahoma City for $15,921.60 and left with it the same day. Record Vol. II at 135–137. A check for this amount was deposited in defendant's bank account. Ms. Smith, who accompanied defendant from Texas to Oklahoma, testified that L.O. Kaiser wanted a Rolex watch. Record Vol. II at 102. On July 8, 1989 the watch was recovered at L.O. Kaiser's house during an execution of a search warrant. We believe this is sufficient evidence for a reasonable jury to infer that the defendant transported the watch from Oklahoma to Texas.

## II.

■■■ Appellant next contends that the district court improperly departed upward from the Sentencing Guidelines when it imposed a 60–month sentence on each count. Departures upward are exceptional. Our review of the district court's upward departure consists of three steps. *See United States v. White,* 893 F.2d 276, 277 (10th Cir.). In the first step:

"we determine whether the circumstances cited by the district court justify a departure from the Guidelines. The sentencing court may depart from the Guidelines only if it 'finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described.' "

*Id.* at 277–78 (citing 18 U.S.C. § 3553(b)). Second, we ascertain whether the circumstances cited by the district court to justify the departure actually exist in the instant case. *Id.* at 278. That assessment involves fact-finding and will be overturned only if clearly erroneous. *Id. See* 18 U.S.C. § 3742(e). Third, we review the district court's degree of departure measured by a reasonableness standard. *Id. See* 18 U.S.C. § 3742(e)(3).

■■■ We review *de novo* whether the circumstances cited by the district court justify departure. *White,* 893 F.2d 276, 279. Defendant's presentence investigation re-

port contained a detailed summary of her criminal history including five prior convictions for theft related offenses, 10 prior convictions of conduct excluded in the computation, eight pending criminal state charges and seven charges of worthless checks which were dismissed in 1989 after she made restitution. Defendant's prior state convictions occurred between 1977 and 1982; however, they are not stale under the Guidelines. Defendant's prior convictions which resulted in a sentence exceeding one year and one month were imposed within 15 years of the instant offense, *see* § 4A1.2(e)(1), while her sentences under one year were imposed in 1982, within 10 years of the instant offense. *See* § 4A1.2(e)(2). Defendant's total "criminal history score," § 4A1.1, was computed at 16 which includes 13 points assessed for her prior convictions and three points added because the instant offense was committed while on parole and less than two years following release from confinement. *See* § 4A1.1(d). This score placed defendant in the highest criminal history category (VI).

Appellant contends that the trial court's upward departure is not justified on any grounds listed in §§ 5K2.1–5K2.14. A review of the record, however, reveals that the court's upward departure was based on § 4A1.3, not §§ 5K2.1–5K2.14. The trial judge stated that in his judgment:

"reliable information in this case indicates that the criminal history category does not adequately reflect the seriousness of Ms. Russell's past criminal conduct, and that the likelihood that she will commit other crimes is a very real one based on the momentum that she has clearly established thus far and her apparent lack of control to slow down her propensity to do so. . . .

". . . [Category VI] significantly underrepresents the seriousness of her criminal history and the likelihood of her further criminal conduct, and I would refer you and any reviewing court to the presentence report which itemizes the remarkable criminal history in this case on which these conclusions are based.

"The sentencing commission . . . recognized that on occasion there might be an egregious serious criminal record which . . . [category VI] is not adequate to reflect the seriousness of the defendant's criminal history, and in such a case . . . a departure from the guidelines may be warranted."

Record Vol. II (Supp.) at 9–10. *See* § 4A1.3.

■ Defendant next challenges the trial court's use of her criminal record in determining to depart upward. At the sentencing hearing, the court gave explicit grounds for its upward departure stating:

"Not only the established conviction history in this case is remarkable and significant, I do recognize that Ms. Russell incurred charges while on probation—or rather on parole in North Carolina, and those charges were dismissed upon her payment of restitution, and, indeed, . . . there are some charges still pending in North Carolina.

"Not only the seriousness of the crimes, but the fact that they were various and numerous, which, while some were consolidated for sentencing purposes, it should be understood that the crimes were committed separately and on separate occasions. And so the consolidation for sentencing purposes should not suggest that they were arising out of one act or occasion. I think that is significant in Ms. Russell's case and, under the guidelines, justifies the departure that I'm about to announce."

Record Vol. II (Supp.) at 10. Defendant's presentence investigation report, as mentioned, shows that in 1982 she was sentenced on 16 separate counts; however, because they were consolidated for sentencing only three criminal history category points were assessed. Section 4A1.2, comment (n.3), specifically recognizes this as a circumstance which may warrant a departure under § 4A1.3. The commentary cautions with respect to consolidated sentences:

"The court should be aware that there may be instances in which this definition is overly broad and will result in a crimi-

nal history score that underrepresents the seriousness of the defendant's criminal history and the danger that he presents to the public. For example, if the defendant commits a number of offenses on independent occasions separated by arrests, and the resulting criminal cases are consolidated and result in a combined sentence of eight years, counting merely three points for this factor will not adequately reflect either the seriousness of the defendant's criminal history or the frequency with which he commits crimes. In such circumstances, the court should consider whether departure is warranted. *See* § 4A1.3."

Since the defendant's consolidated sentence involved 16 separate counts, each occurring on independent occasions, it was proper for the sentencing court to rely on this as a factor in its decision to depart. *See also White*, 893 F.2d 276, 279; *United States v. Roberson*, 872 F.2d 597, 606–07 (5th Cir.) (sentencing court was merely complying with the Guidelines when it considered defendant's consolidated sentence as a factor warranting an upward departure from criminal history category VI).

■ In addition, the court stated that its upward departure was based on its recognition that the defendant incurred the instant offense while other charges were pending. The Guidelines expressly list this as a factor warranting consideration of an upward departure. Section 4A1.3 states, in a non-exhaustive list, that an example of "reliable information" warranting a departure is information concerning:

"(d) whether the defendant was pending trial, sentencing, or appeal on another charge at the time of the instant offense."

The presentence investigation report, as mentioned, indicates that defendant is currently awaiting trial in North Carolina on eight criminal charges filed between September 1987 and January 1988. These charges were not considered in calculating her criminal history category because she has not yet been convicted or sentenced. Since defendant's charges were pending when she was indicted in the instant of-

fense, § 4A1.3(d) is an additional justification for the court's departure. *See White*, 893 F.2d 276, 279–80; *United States v. Diaz–Villafane*, 874 F.2d 43, 50–51 (1st Cir.) (sentencing judge can consider the pendency of defendant's criminal charges as a factor warranting an upward departure under § 4A1.3).

■ The court also considered seven charges of worthless checks mentioned above which were dismissed in January 1989 because defendant made restitution to the victims. This too is a justifiable factor under § 4A1.3(e) of "prior similar adult criminal conduct not resulting in a criminal conviction."

The trial court's cited reasons are explicit circumstances under the Guidelines which warrant a departure. Therefore, we find ample justification for the court's upward departure on the ground that defendant's criminal history category manifestly underrepresented the seriousness of her past criminal involvement and her propensity to commit future crimes.

Turning to the second step, we have no difficulty concluding that the grounds cited by the district court had a factual basis in this case. There is no dispute that the circumstances cited by the trial court existed. Moreover, defendant did not dispute the accuracy of the presentence investigation report or point to any evidence suggesting the trial court was clearly erroneous.

■ We must finally determine whether the trial court's degree of departure from the Guidelines was reasonable. *White*, 893 F.2d 276, 280. This determination requires us to consider the district court's proffered justifications as well as such factors as: the seriousness of the offense, the need for just punishment, deterrence, protection of the public, correctional treatment, the sentencing pattern of the Guidelines, the policy statements contained in the Guidelines and the need to avoid unwarranted sentencing disparities. *Id.* at 278; 18 U.S.C. § 3742(e)(3). With these factors in mind, we should not lightly overturn determinations of the appropriate degree of departure. *Id.* at 279.

We have recognized that § 4A1.3 provides specific procedures for the court where the defendant's criminal history score underrepresents past criminal conduct. *United States v. Keys*, 899 F.2d 983, 990–91 (10th Cir.). However, in the case before us the defendant is already in the highest criminal history category (VI).

To be sure, determining the reasonableness of the degree of departure from category VI is troublesome. In *United States v. Brown*, 899 F.2d 94 (1st Cir.), the trial court departed upward from the defendant's criminal history category VI on the ground that category VI did not adequately reflect the seriousness of defendant's past criminal conduct. § 4A1.3. The First Circuit, engaging in a three-step procedure for review, stated that with respect to the reasonableness of the degree of departure:

"Generally, the district court has a greater familiarity with the nooks and crannies of a particular case. Therefore, appellate courts should 'not lightly disturb decisions to depart, or not, or related decisions implicating degrees of departure.' Given how much [defendant's] criminal history was underrepresented by the guidelines, we cannot say that the district court's departure was outside the realm of reasonableness."

*Brown*, 899 F.2d at 98 (citations omitted). *See also, Diaz–Villafane*, 874 F.2d 43, 51–52 (rejecting contention that an assessment of the "reasonableness" of the degree of departure is "merely a matter of arithmetic" and refusing to turn "idiosyncratic departure decisions into mechanistic bean-counting").

We agree with the First Circuit and hold that in determining the reasonableness of the degree of departure from category VI, we should afford the trial judge due deference and not "lightly overturn determinations of the appropriate degree of departure." *White*, 893 F.2d at 279; *see also, United States v. Joan*, 883 F.2d 491 (6th Cir.); *Roberson*, 872 F.2d 597. Our approach is consistent with the policy and structure of the Guidelines. No graduations in the Guideline grid exist above category VI. An offender reaches this catego-

ry with a criminal history score of 13 or more. The Sentencing Commission recognized that circumstances may exist warranting a departure above category VI, *see* § 4A1.3 (policy statement); however, it does not impose any mechanics for the trial judge to reference when determining the degree of departure from category VI. This is significant. We do not believe the Commission intended to impose any particular formula upon the trial judge, although the trial court is not free to disregard the Guideline requirements of proportionality and uniformity just because it determined that a departure is warranted. The court in *Roberson* stated:

"The Guidelines, however, instruct the court to move only between criminal history categories when it finds the applicable category inadequate. Guidelines § 4A1.1. The factors relevant to the offense levels are distinct from those pertinent to the criminal history categories. Each recommended range reflects the appropriate sentence for each combination of offense level and criminal history factors. Arbitrarily moving to a new offense level *when the highest criminal category* proves inadequate would skew the balancing of factors which the Commission created in the Sentencing Table."

872 F.2d at 607–08 (emphasis added).

This issue is within the area obviously left within the "retention of considerable discretion" by the trial judge, *White*, 893 F.2d at 279, although not unfettered discretion. Because the departure cases will often involve unique and unusual circumstances, this is beyond any suitable application of strict uniformity or formula. The Commission would have provided such a formula had one been intended. Although we cannot anticipate all of the ways in which district courts may seek to provide for upward departures from criminal history category VI, we are unwilling to improvise some mechanical extension of the criminal offense categories as a means of extending the criminal history categories as was suggested in *United States v. Ferra*, 900 F.2d 1057 (7th Cir.).

 Given our deference to the trial judge's determination of the degree of departure and the defendant's extensive past criminal conduct, exemplified by numerous pending criminal charges and a myriad of past criminal convictions, we cannot conclude that the degree of departure was unreasonable.

### III.

 Finally, we also reject defendant's contention that the district court erred in directing that her sentence for transporting in interstate commerce 100 tires fraudulently obtained, 18 U.S.C. § 2314, shall run consecutively to her sentence imposed for conspiracy to defraud Joe Esco Tire Company under 18 U.S.C. § 371. As support, defendant urges that the facts and allegations contained in 18 U.S.C. § 2314 and 18 U.S.C. § 371 and the evidence produced at trial "clearly indicate that the elements necessary for conviction under both counts were identical." Appellant's Brief at 20. Thus, under *Pinkerton v. United States*, 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489, the principle of merger prevents the trial court from imposing consecutive sentences.

Defendant's reliance on *Pinkerton* is misplaced. To implicate the merger principle under *Pinkerton* an agreement must be an essential element to the substantive offense. *See Iannelli v. United States*, 420 U.S. 770, 781–85, 95 S.Ct. 1284, 1291–93, 43 L.Ed.2d 616; *United States v. Davis*, 793 F.2d 246 (10th Cir.). In this case, even though the conspiracy and the substantive count are closely related factually, there is no need to prove that an agreement existed to sustain a conviction for transportation in interstate commerce of stolen goods, 18 U.S.C. § 2314. Therefore, the merger principle does not prevent the trial court from imposing consecutive sentences.

Whether to impose a consecutive or concurrent sentence is within the discretion of the trial court, and the court is directed to take into consideration the factors set forth in 18 U.S.C. § 3553(a). *See* 18 U.S.C. § 3584(b). We find nothing in the record to indicate that the district court erred in imposing consecutive sentences.

AFFIRMED.