**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Joseph Michael KALADY,
Defendant–Appellant.**

**No. 90–8087.**

United States Court of Appeals,
Tenth Circuit.

Aug. 15, 1991.

---

Aleksander D. Radich, Asst. U.S. Atty. (Richard A. Stacy, U.S. Atty., Gay Woodhouse, Asst. U.S. Atty., with him on the brief), Cheyenne, Wyo., for plaintiff-appellee.

Ronald G. Pretty, Cheyenne, Wyo., for defendant-appellant.

Before ANDERSON, TACHA, and BRORBY, Circuit Judges.

BRORBY, Circuit Judge.

Joseph M. Kalady (Kalady, or Appellant) appeals his conviction and sentence for failure to appear in violation of 18 U.S.C. § 3146. Kalady claims he was illegally denied a speedy trial, improperly refused access to a sentencing recommendation, and illegally sentenced. Familiarity with the flow of events which brought Kalady to this juncture is necessary to understand his appeal.

## BACKGROUND

This case begins on December 2, 1988, when Kalady was indicted by a federal grand jury in Cheyenne, Wyoming, for seven counts including mail fraud, wire fraud, and conspiracy. Kalady was at that time on parole from a previous federal fraud conviction in the Northern District of Illinois. Kalady was arraigned on the new charges in the United States District Court for the District of Wyoming (district court) in January 1989. Pursuant to a plea agreement, Kalady was then released on a personal recognizance bond after he agreed to appear for trial on May 3, 1989. Kalady did not appear on that date. A bench warrant was promptly issued for his arrest. Meanwhile, on May 17, 1989, United States Parole Commissioners in Illinois issued an arrest warrant based upon "reliable infor-

mation" that Kalady had "violated one or more conditions of his release."

The second chapter in this saga opens with Kalady's arrest at a Wisconsin monastery by United States Marshals on November 8, 1989. Kalady was arrested on the parole violation warrant from Illinois. Kalady was then taken to a federal facility in Chicago, Illinois. As the pace of events temporarily quickened, a federal grand jury in Cheyenne indicted Kalady on December 1, 1989, for his previous failure to appear. The federal district court in Wyoming issued a warrant for Kalady's arrest on that charge five days later.

Ensnared in the maw of the federal parole authorities, however, Kalady was obliged to winter in Chicago. During that time period, the Government attempted to negotiate a plea agreement with Appellant's counsel in Cheyenne. Back in Chicago, although a preliminary hearing was held within a month of his arrest, Kalady's parole revocation hearing was delayed until late February 1990. The Parole Commission issued a formal order revoking Kalady's parole on March 9, 1990.

Meanwhile, alert to the passage of time, federal officials in Wyoming requested a court ruling that Kalady's right to a speedy trial on the failure to appear charge was not jeopardized by his detention in Illinois on the federal parole violation charges. On the following day, February 7, 1990, the Wyoming federal court responded and issued its "Order Excluding Time and Granting A Continuance." On April 3, the Government requested Kalady's transportation to Wyoming. Even so, Kalady was not returned to Wyoming until May 3, 1990, when federal officials effected his transfer. When he finally arrived in Cheyenne, Kalady was served the arrest warrant for failure to appear.

As the pace of events again quickened, Kalady was arraigned on May 11, 1990. The government, "due to the failing memory of one of Kalady's co-defendants—a key Government witness", then successfully moved to dismiss the underlying fraud indictment with prejudice. Kalady pled guilty to the failure to appear charge on July 2, 1990, and reserved his right to appeal the alleged speedy trial violation.

After preparation of a presentence report, Appellant was sentenced under the United States Sentencing Guidelines (U.S.S.G.) on August 14, 1990. The court granted a two-level reduction for acceptance of responsibility and set Kalady's total offense level at ten. As Kalady had amassed eighteen criminal history points, he fell within category VI, the highest criminal history category. After discussing Kalady's criminal history at length, the court declined to pronounce a sentence within the guideline range of 24 to 30 months. The court departed upward, sentencing Kalady to 40 months incarceration and three years of supervised release. Kalady timely appealed.

## ISSUES ON APPEAL

Kalady argues the trial court failed to express adequately its reasons for upward departure and for the actual sentence imposed. Kalady insists the court abused its discretion in pronouncing a consecutive rather than concurrent sentence. Kalady also argues the trial court unconstitutionally deprived him of the right to see the probation officer's sentencing recommendation. Finally, Kalady claims his indictment should have been dismissed because his constitutional and statutory rights to a speedy trial were violated. The Government disagrees on all counts. We consider the issues in reverse order for analytical clarity.

## SPEEDY TRIAL RIGHTS

Kalady appeals the denial of his motion to dismiss the failure to appear charge for violation of his speedy trial rights. Kalady directs our attention to the six-month period between his arrest in Wisconsin on November 8, 1989, and his subsequent arrest and arraignment in Wyoming in May 1990, claiming this delay violates his constitutional and statutory rights to a speedy trial. Kalady claims the Government intentionally failed to procure his transfer to Wyo-

ming for its own tactical advantage, thereby substantially prejudicing his defense.

■ We first consider Kalady's statutory right to a speedy trial. Kalady argues the seventy-day period specified in the Speedy Trial Act, 18 U.S.C. § 3161 *et seq.*, was exceeded and his indictment should have been dismissed with prejudice. The relevant section of the Speedy Trial Act provides:

> In any case in which a plea of not guilty is entered, the trial of a defendant charged in an information or indictment with the commission of an offense shall commence within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, *whichever date last occurs.*

18 U.S.C. § 3161(c)(1) (emphasis added). The seventy-day period may be extended by resort to the exclusions listed in § 3161(h). *See, e.g., United States v. Pena,* 920 F.2d 1509, 1516–17 (10th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 2802, 115 L.Ed.2d 975 (1991).

Kalady assumes the statutory, seventy-day period runs from the date of his initial arrest. He is mistaken. Kalady was indicted on December 1, 1989, but did not appear before a judicial officer of the court in which that charge was pending until May 4, 1990.[1] Under the plain language of the Speedy Trial Act, the seventy-day period therefore began to elapse on the "last occur[ing]" date, May 4, 1990. Although § 3161(c)(1) directs us to consider the time period *following* that date in determining whether a violation has occurred, Kalady argues seventy-day period was exceeded *before* that date. Kalady's grievance is simply not addressed by § 3161. He was not deprived his statutory right to a speedy trial. *See United States v. Snyder,* 707 F.2d 139, 142 (5th Cir.1983) (where indictment precedes arraignment, seventy-day

period under 18 U.S.C. § 3161(c)(1) starts to run on date of arraignment).

■ Kalady next argues the district court should have dismissed his indictment under Fed.R.Crim.P. 48(b) for " 'unnecessary delay in bringing a Defendant to trial.' " Rule 48(b) states:

> If there is unnecessary delay in presenting the charge to a grand jury or in filing an information against a defendant who has been held to answer to the district court, or if there is unnecessary delay in bringing a defendant to trial, the court *may* dismiss the indictment, information, or complaint.

Fed.R.Crim.P. 48(b) (emphasis added). A dismissal under Rule 48(b), whether it be on motion or *sua sponte,* is a matter addressed to the sound discretion of the trial court. *United States v. Barney,* 550 F.2d 1251, 1254 (10th Cir.1977).

■ Appellant's complaint focuses on the period between November 1989, and May 1990. Kalady asserts he "was arrested on 8 November, 1989 on the warrant from Wyoming," and argues that the Government intentionally delayed his return to Wyoming in order to avoid "Speedy Trial problems." This argument fails because the record establishes that Kalady was arrested in November 1989 on the parole violation warrant from Illinois. Kalady was not arrested on authority of the Wyoming warrant for failure to appear until May 3, 1990. Therefore, Appellant's complaint involves post-indictment, pre-arrest delays.

However, "Fed.R.Crim.P. 48(b), treating unnecessary delay in presenting the charge to a grand jury or in bringing a defendant to trial, applies only to *post-arrest* delay." *United States v. Revada,* 574 F.2d 1047, 1048 (10th Cir.1978) (emphasis added). *See United States v. Lovasco,* 431 U.S. 783, 789 n. 8, 97 S.Ct. 2044, 2048 n. 8, 52 L.Ed.2d 752 (1977); *United States v. Marion,* 404 U.S. 307, 319, 92 S.Ct. 455, 462, 30 L.Ed.2d 468 (1971). Thus, Appellant can claim no relief under Rule 48(b).

---

1. Although Appellant was arraigned on May 11, 1990, the Government suggests that May 4, 1990, was "the date of [Appellant's] initial appearance before a magistrate." We therefore use May 4, 1990, as the relevant date under § 3161(c)(1).

We next consider Appellant's constitutional claims. First, Kalady claims he was deprived of his speedy trial right under the Sixth Amendment. "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial...." U.S. Const. amend. VI. As Appellant correctly notes, we apply the four factors of *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), in determining whether the constitutional guarantee of a speedy trial has been violated.

"A Sixth Amendment speedy trial claim is assessed by balancing the length of the delay, the reason for the delay, whether the defendant asserted his right to a speedy trial, and whether the delay prejudiced the defendant." *United States v. Tranakos*, 911 F.2d 1422, 1427 (10th Cir. 1990) (citing *Barker*, 407 U.S. at 530, 92 S.Ct. at 2192). None of these factors, taken by itself, is "either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant." *Barker*, 407 U.S. at 533, 92 S.Ct. at 2193. Considering these factors together with the circumstances of this case, we find Appellant's argument to be spurious.

The length of delay is a threshold factor; only if the period is "presumptively prejudicial" need we inquire into the other factors. *Barker*, 407 U.S. at 530, 92 S.Ct. at 2192. Considering the alleged delay in this case, we note the total amount of time between indictment and guilty plea was eight months. The time between arrest and guilty plea was far less—a mere two months. We recently found a delay of thirty months under similar circumstances to comport with the constitutional right to a speedy trial. *See United States v. Bagster*, 915 F.2d 607, 611 (10th Cir.1990). In light of *Bagster*, we are not convinced that the delay in this case was "presumptively prejudicial." *Barker*, 407 U.S. at 530, 92 S.Ct. at 2192. Nevertheless, presuming without finding such prejudice, we next consider the remaining *Barker* factors.

The principle reason for the delay was Kalady's custody in another jurisdiction on charges of parole violation. Federal officials in the District of Wyoming took appropriate efforts to gain custody of Kalady, and were able to secure his transportation to Wyoming within eight weeks of the conclusion of his parole revocation proceedings in Chicago. We find no significance in Kalady's assertion that he was in "federal custody" from the moment of his arrest until his sentencing. He was simply not within the jurisdiction of the federal district court in Wyoming. The Government did not impermissibly fail of diligence in its efforts to affect his transfer; *Bagster* approved a similar level of effort where federal officials sought custody of a defendant held by state authorities. *See* 915 F.2d at 611.

The third *Barker* factor, defendant's assertion of the speedy trial right, "is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right." *Barker*, 407 U.S. at 531–32, 92 S.Ct. at 2192–93. However, "[w]e are unimpressed by a defendant who moves for dismissal on speedy trial grounds when his other conduct indicates a contrary desire." *Tranakos*, 911 F.2d at 1429. Kalady's assertion of his speedy trial right took the form of a motion filed on May 21, 1990— well after the conclusion of his parole revocation proceedings and subsequent return to Wyoming. As Kalady chose not to assert his right to a speedy trial until trial itself was imminent, we are unimpressed by his alleged deprivation.

Finally, we consider whether the delay prejudiced the defendant. We assess prejudice in light of three interests: preventing oppressive pretrial incarceration; minimizing anxiety and concern of the accused; and limiting the possibility that the defense will be impaired. *Barker*, 407 U.S. at 532, 92 S.Ct. at 2193. Kalady was not incarcerated for an oppressive period of time. Moreover, the delay was not likely to be of much concern to Kalady, as his parole had just been revoked. Finally, we note that Kalady pled guilty and does not dispute his failure to appear in violation of 18 U.S.C. § 3146. Appellant's lengthy discussion of

prejudice persistently confuses the penalties he suffered for parole violation with the negligible impacts of the delays entailed by the revocation proceedings and his subsequent transfer to Wyoming. Finally, we are not convinced that the unforeseeable disability of a government witness worked any unfair prejudice on Appellant.

Having considered all of the *Barker* factors, we hold that Kalady's Sixth Amendment right was not violated. Appellant also alleges a violation of his Fifth Amendment right to due process by virtue of his delayed trial. As this claim is factually without merit, we decline to address it.

## PROBATION OFFICER'S RECOMMENDATION

■ Kalady argues this court should hold Federal Rule of Criminal Procedure 32(c)(3)(A)[2] to be unconstitutional on authority of *Gardner v. Florida*, 430 U.S. 349, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977). Kalady insists he has a constitutional right to see the probation officer's sentencing recommendation. He unsuccessfully argued the same in a motion to the district court.

After expressly noting the special status of the death penalty, *Gardner* considered the justifications "for a capital-sentencing procedure which permits a trial judge to impose the death sentence on the basis of confidential information which is not disclosed to the defendant or his counsel." *Gardner*, 430 U.S. at 353–54, 358, 97 S.Ct. at 1202–03, 1204. Three members of the Court concluded that "petitioner was denied due process of law when the death sentence was imposed, at least in part, on the basis of information which he had no opportunity to deny or explain." *Id.* at 362, 97 S.Ct. at 1207 (Opinion of Stevens, J.). We find no support in *Gardner* for the argument Appellant advances.

In this case the district court did not consider any factual information not contained in the presentence report. The sentencing judge stated, "I have received nothing other than this presentence report with regard to sentence and, thus, have nothing further to disclose or make part of the presentence report in this case or place in the record either under seal or otherwise." The court was obviously cognizant of its duty, under Fed.R.Crim.P. 32(c)(3)(B), to provide a summary of any nondisclosed factual information upon which it had relied in determining the sentence. As there was no such factual information contained in the probation officer's sentencing recommendation, the rule of *Gardner* is plainly inapplicable.

Nevertheless, Appellant's claim fairly raises a separate issue in the context of departure sentences. That issue is whether Rule 32 requires the presentence report to identify the factors considered relevant to determining the appropriate degree of departure, and to identify an alternate guideline range based on those factors. The Supreme Court recently emphasized that "Rule 32 contemplates full adversary testing of the issues relevant to a Guidelines sentence and mandates that the parties be given 'an opportunity to comment upon the probation officer's determination and on other matters relating to the appropriate sentence.'" *Burns v. United States*, ─── U.S. ───, 111 S.Ct. 2182, 2186, 115 L.Ed.2d 123 (1991) (quoting Fed. R.Crim.P. 32(a)(1)).

Rule 32 requires the sentencing court, "[p]rior to the sentencing hearing," to "provide the counsel for the defendant and the attorney for the Government with *notice of the probation officer's determination,* pursuant to the provisions of subdivision (c)(2)(B), *of the sentencing classifications and sentencing guideline range believed to be applicable to the case.*" Fed. R.Crim.P. 32(a)(1) (emphasis added). Subdivision (c)(2)(B) in turn requires the presentence report to contain the offense level

---

**2.** Rule 32(c)(3)(A) provides in pertinent part:
　　At least 10 days before imposing sentence, unless this minimum period is waived by the defendant, the court shall provide the defendant and the defendant's counsel with a copy of the report of the presentence investigation, including the information required by subdivision (c)(2) *but not including any final recommendation as to sentence....*
Fed.R.Crim.P. 32(c)(3)(A) (emphasis added).

and criminal history category "that the probation officer believes to be applicable to the defendant's case" as well as an explanation by the probation officer of any factors that indicate that a departure sentence would be appropriate. Fed.R.Crim.P. 32(c)(2)(B).

Given the purpose of Rule 32, these requirements must be read to apply equally to departure and non-departure sentences. Were we to hold otherwise, much of the efficacy of Rule 32 would be lost in the departure context. Without advance notice of the degree of departure contemplated, a defendant is unprepared to participate in the "focused, adversarial resolution of the legal and factual issues relevant to fixing Guidelines sentences", *see Burns,* 111 S.Ct. at 2187, contemplated by Rule 32. The presentence report's failure to recommend a particular degree of departure in the form of an alternate guideline range prevents the fulfillment of Rule 32's purpose in a manner similar to the unannounced, sua sponte departure decision disallowed in *Burns. See* 111 S.Ct. at 2187–88.

The presentence report's failure to contain the alternate departure calculations will not destroy the validity of the sentence imposed so long as the sentencing court has given both parties notice of the facts warranting departure and of the method or reasons to be employed in fixing the degree of departure and a reasonable opportunity to be heard concerning these matters.

We also note *United States v. St. Julian,* 922 F.2d 563, 570 (10th Cir.1990), states the presentence report should calculate an alternate guideline range in the case of an upward departure so as to "provide the ... court meaningful assistance and give the defendant a better opportunity to meaningfully participate and present his or her evidence, arguments and objec-

tions concerning both the departure and the amount or degree of the departure." 922 F.2d at 570. We return to this issue below in our discussion of the departure sentence imposed in this case.

## CONSECUTIVE SENTENCE

Kalady argues the district court erred in requiring his forty-month sentence to run consecutively to his Illinois sentences for parole violation and failure to appear. He also complains of sentencing disparity and the judge's reasons for imposing a consecutive sentence.

■ Whether to impose a consecutive or concurrent sentence is usually within the discretion of the trial court. *United States v. Russell,* 905 F.2d 1450, 1457 (10th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 267, 112 L.Ed.2d 224 (1990). In some instances, the relevant statute requires consecutive sentencing. *See, e.g., United States v. Lanzi,* 933 F.2d 824 (10th Cir.1991) (18 U.S.C. § 924(c)(1) requires consecutive sentence for use of dangerous weapon in connection with violent crime).

The Government directs our attention to 18 U.S.C. § 3146(b)(2), which states "A term of imprisonment imposed under this section shall be consecutive to the sentence of imprisonment for any other offense." *See also,* U.S.S.G. § 2J1.6, comment. (n. 2). The Government suggests § 3146(b)(2) removes the district court's discretion to impose a concurrent sentence even when failure to appear is the sole offense charged—even when there isn't "any other offense" presently before the court. 18 U.S.C. § 3146(b)(2). Because the district court did impose a consecutive sentence in this case, we do not decide whether the court's discretion to impose a concurrent sentence was removed by § 3146(b)(2).[3]

---

**3.** The Government also argues U.S.S.G. § 5G1.3 applies and removes the district court's discretion to impose a concurrent sentence. Section 5G1.3 applies "[i]f the instant offense was committed *while the defendant was serving a term of imprisonment* (including work release, furlough, or escape status)...." U.S.S.G. § 5G1.3 (emphasis added). Similar language is found in comments to that section which provide "Where

the defendant is *serving an unexpired term of imprisonment,* but did not commit the instant offense while serving that term of imprisonment, the sentence for the instant offense may be imposed to run consecutively or concurrently with the unexpired term of imprisonment." *Id.* Comment. (emphasis added). Again, because the district court imposed a consecutive sentence in this case, we do not decide whether

■ Moreover, even if this sentencing decision was discretionary, we hold the district court did not abuse that discretion in imposing a consecutive sentence here.[4] Indeed, had a concurrent sentence been imposed, Kalady would have gone unpunished for his failure to appear before the court on May 3, 1989. Appellant's argument that he was in fact punished for that crime by the Parole Commission ignores the distinct grounds for which his parole was revoked, including his unauthorized absence from Illinois and failure to fulfill reporting requirements.

As regards Appellant's complaint of disparate sentencing, we note that the co-defendants used for comparison were neither charged with, nor sentenced for, failure to appear. Appellant's argument is nonsensical and therefore fails.

## UPWARD DEPARTURE

Finally, Appellant challenges his departure sentence as a violation of the sentencing guidelines. Kalady first argues the sentencing court violated the requirements of *United States v. White*, 893 F.2d 276 (10th Cir.1990), because it was not sufficiently "explicit as to why it was departing upward." He further argues the court violated the requirements of *White* and *United States v. Jackson*, 921 F.2d 985 (10th Cir.1990) (en banc), by failing to adequately explain its degree of departure.

■ *White* explained our review of departures from the sentencing guideline range. 893 F.2d at 277–79. Under the three-step process set forth in *White*, we apply: de novo review of whether the circumstances cited by the district court warrant departure; clearly erroneous review of the factual determinations underlying the decision to depart; and review of the degree of departure under a standard of reasonableness. *Id.* at 278. We now apply the *White* analysis to the challenged sentence.

■ The district court departed upward on the basis of criminal history category. There is no dispute over the appropriate offense level. "A district court has considerable discretion in appraising a defendant's criminal history. The court may consider the defendant's present or past criminal conduct as grounds for departure to a higher criminal history category." *Jackson*, 921 F.2d at 991. The sentencing transcript leaves no doubt that the district court departed upward from the sentencing guideline range because of Appellant's extraordinary criminal history, only part of which was counted in calculating Appellant's criminal history points. The court reflected at length on Kalady's life of crime, observing:

Based on 18 total criminal history points, you fall into a criminal history category of six, which is the highest category there is. And although many of the offenses, all have been, it appears, pretty much deceptive practices, conspiracy, bank theft, breaking-entering, larceny, burglary, petty larceny, interstate transportation of stolen money, those types of offenses, property-type crimes, there comes a point when the Court just has to express its really [sic] outrage for a life wasted on crime, and yours has been....

. . . .

... [T]here is some idea in the sentence I'm imposing of protecting society.

It seems to me that based upon what is—what your history is, this is an appropriate case for an upward departure. I don't have any strong view in my mind. I recognize that the guideline range in this case is 24 to 30 months. In my view, that based upon the offenses that I've seen that have characterized your life

the sentencing guidelines removed the court's discretion to impose a concurrent sentence under these facts, where defendant was free on parole at the time of the offense.

**4.** Authority for the sentencing court's discretion could be found in 18 U.S.C. § 3584(a), which states: "if a term of imprisonment is imposed on a defendant who is already subject to an undischarged term of imprisonment, the terms may run concurrently or consecutively...." Although 18 U.S.C. § 3584(b) requires courts to consider the factors of 18 U.S.C. § 3553(a) in imposing a sentence, our review of the court's departure sentence, infra, verifies the court's compliance with that requirement.

since age 25 and are part of the criminal history in this case, it seems to me a sentence of 40 months is consistent with the provisions of paragraph 4A1.3 of the Sentencing Guidelines.

The referenced guidelines section 4A1.3, *Adequacy of Criminal History Category,* specifically contemplates upward departures in the case of "an egregious, serious criminal record in which even the guideline range for a Category VI criminal history is not adequate to reflect the seriousness of the defendant's criminal history." U.S.S.G. § 4A1.3, p.s. at 4.10.

The presentence report identifies the convictions which were not counted towards Appellant's eighteen criminal history points, including: theft; auto theft and conspiracy; interstate transportation of stolen property; petty larceny; burglary of vending machines; breaking and entering, larceny, and possession of burglary tools; bank theft; and three separate convictions on five counts of deceptive practice.[5] The court also indicated its concerns regarding the need to protect society from Appellant. In short, the sentencing court correctly determined that Category VI of the criminal history did not adequately reflect the seriousness of Appellant's criminal history.

The sentencing transcript also indicates the court's adequate consideration of the sentencing factors set forth in 18 U.S.C. § 3553(a), including the history and characteristics of the defendant, the need for the sentence to provide just punishment and to protect the public, and the need to provide defendant with effective correctional, vocational, and medical treatment. Finally, we note the "Memorandum of Sentencing Hearing and Report of Statement of Reasons" identifies "4A1.3 Adequacy of Criminal History Category" as the reason for departure. Under these facts, we hold the sentencing court's explanation of its reasons for upward departure is sufficiently explicit, and the circumstances warrant upward departure. 18 U.S.C. § 3553(c)(2).

*White*'s first step is thus satisfied. *White,* 893 F.2d at 278.

*White*'s second step is satisfied because the district court's factual determinations are not clearly erroneous. *Id.* The presentence report in this case provides "a sufficient factual basis to justify departure." *Id.* Appellant does not dispute the accuracy of the presentence report, nor does he offer any evidence or argument suggesting the trial court erred. *See Russell,* 905 F.2d at 1455.

We now consider the reasonableness of the degree of departure under *White*'s third step. *Id.* As we stated in *Jackson:*

> We consider the following factors in reviewing the district court's degree of departure:
>
> "[T]he district court's proffered justifications, as well as such factors as ... the seriousness of the offense, the need for just punishment, deterrence, protection of the public, correctional treatment, the sentencing pattern of the Guidelines, and the need to avoid unwarranted sentencing disparities."

*White,* 893 F.2d at 278 (citing) 18 U.S.C. § 3742(e)(3); 18 U.S.C. § 3553(a)).

> The first of these factors—the district court's proffered reasons for the degree of departure—is an absolute requirement.... Without *specific reasons for the sentence imposed,* we cannot exercise our statutory mandate to review the reasonableness of a departure sentence. We will not rationalize a district court's departure from the Guidelines—either the decision to depart or the degree of departure.

*Jackson,* 921 F.2d at 989–90 (emphasis added, citations omitted). We recognize that "the process of assaying the 'reasonableness' of a particular ... departure remains enigmatic." *St. Julian,* 922 F.2d at 568. It is especially so in cases involving departure upward from criminal history category VI.

---

5. In addition to these aspects of Appellant's criminal history, the Presentence Report includes a separate category of "Other Criminal Conduct." Of that category, the court stated "these are unknown dispositions, discharged, stricken off the ledger, and I will agree with you that they are [of] minimal value in my assessment of you for purposes of sentencing...." The court did not consider that category of offenses in sentencing Appellant.

The district court's attempt to explain the degree of departure is contained in the following statement:

> [T]here is some idea in the sentence I'm imposing of protecting society.
>
> It seems to me that based upon what is—what your history is, this is an appropriate case for an upward departure. I don't have any strong view in my mind. I recognize that the guideline range in this case is 24 to 30 months. In my view, that based upon the offenses that I've seen that have characterized your life since age 25 and are part of the criminal history in this case, it seems to me a sentence of 40 months is consistent with the provisions of paragraph 4A1.3 of the Sentencing Guidelines.

Thus, the sentencing judge explained that he imposed the additional ten months above the guidelines range to protect society, and because criminal history category VI was inadequate. The explanation fails to reveal how the court selected the degree of departure—ten months.

Under our cases, this explanation is inadequate. *See, e.g., St. Julian,* 922 F.2d at 567–70; *Jackson,* 921 F.2d at 991–93; *United States v. Davis,* 912 F.2d 1210, 1215 (10th Cir.1990); *United States v. Gardner,* 905 F.2d 1432, 1435–39 (10th Cir.), *cert. denied,* — U.S. —, 111 S.Ct. 202, 112 L.Ed.2d 163 (1990). As we stated in *Gardner,* "[w]e cannot ... speculate as to reasoning that might have been employed by the sentencing court to arrive at a particular sentence.... [T]he trial court must articulate *its* analysis supporting the degree of departure selected." *Id.* at 1436 (emphasis in original).

The Government argues "[t]he reasons the trial judge gave for the departure ... suffice to explain the degree of departure as well." This argument is untenable in light of 18 U.S.C. § 3553(c), which requires the sentencing court to state "the reasons for its imposition of *the particular sentence.*" 18 U.S.C. § 3553(c) (emphasis added). Explanation of *why* a departure is made cannot fulfill this separate requirement. Once the sentencing court assumes the burden of departure, "it must also bear the corresponding burden of ensuring the record contains sufficient information to enable a reviewing court to determine *how* ... the sentencing court reached the degree of departure imposed." *St. Julian,* 922 F.2d at 570 (emphasis added).

Although the district court cited the policy statement of guideline § 4A1.3, that section merely explains possible grounds for departure on the basis of criminal history category. Section 4A1.3 does not provide guidance in determining the degree of departure where criminal history category VI is considered inadequate. We addressed this problem in *Jackson* and recommended methodologies for use in such a departure, stating:

> In the rare situation when a sentencing court has examined category VI and can articulate reasons for that sentence's inadequacy, two alternative reference points within the Guidelines could help guide a departure beyond the limits of the Guidelines. First, the increments between the Guidelines ranges could assist both the sentencing court and the reviewing court in gauging the reasonableness of the degree of departure. Observing the point value assigned to various criminal history elements and the way they move one upward through the criminal history categories could help the court determine an appropriate analogue sentence.... Second, the career offender category, U.S.S.G. § 4B1.1, may provide the appropriate analogy in some cases.

*Jackson,* 921 F.2d at 993 (citations omitted).

As we noted in *Jackson,* these examples are not meant to limit the district courts' exercise of discretion. *Id.* They are merely examples of methods a district court might use to determine an appropriate degree of departure upward from criminal history category VI. The appropriate use of either method would result in a non-arbitrary, reasonable sentence.

The problem presented by upward departure beyond criminal history category VI is a continuing conundrum. Nevertheless, our cases reveal a useful approach. First, the presentence report should set forth

both the facts justifying an upward departure *and* a suggested sentencing range for use if the sentencing court decides to depart. *St. Julian,* 922 F.2d at 570. Second, we have set forth two alternative methods that could be used to determine a reasonable departure sentence. *See Jackson,* 921 F.2d at 993 (excerpted above). In summary, the methods set forth in *Jackson* involve extrapolation from other guidelines levels or analogy to closely related circumstances or conduct addressed by the guidelines. *See also Gardner,* 905 F.2d at 1439. Finally, we have eschewed any particular bright-line rule or formula, *Russell,* 905 F.2d at 1456, believing the law surrounding departure sentences must evolve through experience.

■ When the facts of a case suggest the possibility of departure, the task of those who prepare the presentence report, and of the sentencing court, is to attempt to predict what the Sentencing Commission would have established as a guideline range had it adequately considered the circumstances justifying the departure. In either suggesting a sentence or in determining the sentence to be imposed, there should exist some reasonable indicia that the sentence is proportional to the crime committed in light of the criminal history. There should also exist some reasonable indicia that the sentence would be similar to those received by like defendants with like criminal histories committing like acts. This latter requirement does not require a comparison of sentences from either within or without the sentencing court's jurisdiction; rather, it requires that a method embodying reason be employed to determine the sentence. A sentence imposed based upon either extrapolation or analogy from the guidelines will ordinarily meet the requirements of proportionality and uniformity. Until the Sentencing Commission provides further guidance, the criteria to be utilized in determining the degree of departure, i.e., the amount the sentence is increased or decreased as a result of the circumstances justifying the departure, will necessarily have to evolve under the tutelage of experience. *Gardner,* 905 F.2d at 1438.

■ As we stated in both *Jackson* and *White,* the sentencing court has an obligation to state the reasons for its imposition of that particular sentence. If the presentence report contains an adequate explanation or reasons for the degree of departure and if the sentencing court is in agreement with the presentence report, the sentencing judge need only specifically adopt the reasons for the degree of departure as set forth in the presentence report. If the sentencing court elects not to adopt the presentence report's recommendation, it will be necessary for the court to state its reasons for selection of the degree of departure.

When we review a sentence for the degree of departure, we review it for reasonableness, which includes the requirements of proportionality, *United States v. Bernhardt,* 905 F.2d 343, 346 (10th Cir.1990), and uniformity, *Gardner,* 905 F.2d at 1436. If the grounds for departure exist, we will affirm the sentencing court's resolution of the matter so long as the circumstances warranting the departure and the departure's direction and extent are in reasonable balance. *United States v. Perez–Magana,* 929 F.2d 518 (9th Cir.1991); *United States v. Ocasio,* 914 F.2d 330 (1st Cir. 1990); *United States v. Whitehead,* 912 F.2d 448 (10th Cir.1990). To accomplish this review it is necessary for the sentencing court to specify the reasons utilized in determining the degree of departure. This circuit has consistently supported a deferential standard of review of the sentencing court's degree of departure. *Russell,* 905 F.2d at 1456. In the case before us the sentencing court revealed why it departed upwards (Category VI inadequately deals with the criminal record) and it revealed in general terms that the purpose of the departure sentence was to protect society. However, the record, the presentence report, and the sentencing court all fail to reveal how the additional ten month sentence was selected. When the degree of departure is unexplained, we are unable to assess the reasonableness of the degree of departure.

On remand, in order to facilitate the "focused, adversarial resolution of the legal and factual issues relevant to fixing" the departure sentence, *Burns,* 111 S.Ct. at 2187, the district court should order the preparation of a presentence report which sets forth the sentencing guideline range that "the probation officer believes to be applicable to the defendant's case". Fed. R.Crim.P. 32(c)(2)(B). In this departure context, that means the presentence report must set forth the "alternate guideline range" supported by the factors indicating the appropriateness of the amount of upward departure. *St. Julian,* 922 F.2d at 570. If a method such as one of those discussed herein is utilized, proportionality and uniformity should follow.

## CONCLUSION

Appellant's conviction is affirmed in all respects. We find the circumstances exist that allow the sentencing court to depart upward. However, we hold the district court failed to adequately state the reasons for its imposition of the particular sentence. We therefore REMAND this case to the district court with instructions to cause a presentence report to be prepared, to conduct a new sentencing hearing, and then to vacate the sentence and resentence Mr. Kalady in a manner consistent with this opinion.