43 F.3d 1484
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Lee W. ROBERTS, also known as Kurlee, also known as Dr. Lee,
Defendant-Appellant.
 No. 94-8011.
 United States Court of Appeals, Tenth Circuit.
 Dec. 2, 1994.
 
 Before KELLY, McKAY and REAVLEY,* Circuit Judges.
 ORDER AND JUDGMENT**
 REAVLEY, Circuit Judge.
 
 
 1
 In a prior appeal, we affirmed the convictions of appellant Lee (aka Kurlee) Roberts, but remanded the case for further findings on drug quantity and Roberts' role in the offense as an organizer or leader. United States v. Roberts, 14 F.3d 502, 526 (10th Cir.1993). The district court held an evidentiary hearing on resentencing. Roberts again appeals his sentence, raising several arguments. We affirm.
 
 A. Drug Quantity
 
 2
 Roberts takes issue with the quantity of methamphetamine the district court found chargeable to him. A sentencing court is directed to aggregate the quantities of drugs that were a part of the same course of conduct or common scheme or plan as the offense of conviction. United States v. Ross, 920 F.2d 1530, 1538 (10th Cir.1990). As we explained in the prior appeal, as long as we can reconstruct the drug quantity calculation using the district court's approximations, we will not disturb the finding as to drug quantity unless it has no support in the record or, after reviewing all the evidence, we are firmly convinced that an error has been made. Roberts, 14 F.3d at 519-20.
 
 
 3
 In the prior appeal we remanded the case for further findings regarding drug quantity. The district court had found a drug amount of 60 to 80 pounds. This amount was based on the confession of Roberts to agent Kevin Hughes that between 1987 and his arrest, Roberts had bought between 150 and 200 pounds of methamphetamine. The district court had credited 60 to 80 pounds "in the last stages or during the conspiracy." We concluded that based "on the state of the present record" a remand was necessary, since "we cannot permit the district court to ground its conclusion in midair." Id. at 520-21. Among our concerns, we noted that (1) the conspiracy period alleged in the indictment extended only from January 1, 1989 through February 26, 1991, (2) the 150 to 200 pound figure given to agent Hughes was for the period between 1987 and Roberts' arrest, (3) the presentence report, without any additional information or corroboration, came up with the 60 to 80 pound figure for the period of the conspiracy, and, inconsistent with the information given to Hughes, asserted that Roberts had distributed 150 to 200 pounds between 1986 and February 26, 1991, (4) the district court had itself expressed some concerns about Roberts' credibility, and (5) other evidence of drug amounts did not provide sufficient corroboration of the 60 pound figure. Id. at 520-21 & n. 32.
 
 
 4
 Our prior decision, we believe, must be construed as limited to the unique posture of the record at that time. In particular, our prior decision should not be read to suggest that a defendant's voluntary confession, standing alone, can never support a district court's factual determination of the drug quantity involved in the offense. In the prior appeal, we noted that Roberts was not challenging as clearly erroneous the district court's finding that his confession was voluntary, id. at 517, and he makes no such argument in this second appeal. Indeed, Roberts makes no argument that his own confession lacked credibility or that the testimony at the resentencing hearing regarding the content of his confession was inaccurate.
 
 
 5
 During the resentencing hearing, the district court further clarified its prior statements regarding the credibility of Roberts. It explained that its concerns about Roberts' credibility were limited to his testimony at the suppression hearing and did not extend to his confession:
 
 
 6
 The thing the Court did is it made certain findings concerning the testimony in this courtroom of Mr. Roberts at a suppression hearing that I believed his statements were not credible and were self-serving. I did not make any specific findings with regard to believability of Mr. Roberts' confession that he made before this officer. And that, I believe, is what accurately happened in this case. I see a real distinction between the two statements.
 
 
 7
 At the resentencing hearing, the government presented three witnesses, all agents with the Wyoming Attorney General's Division of Criminal Investigation, as well as several exhibits attempting to aggregate or summarize the drug quantities attributable to the three defendants. The first witness, agent Hughes, testified at length regarding the confession Roberts had made to him.
 
 
 8
 Of particular note, Hughes was asked about what Roberts had told him regarding his drug purchases in 1989:
 
 
 9
 Q: Did he indicate how much he was purchasing during calendar year 1989?
 
 
 10
 A: A pound and occasionally two pounds every week to 10 days in Las Vegas.
 
 
 11
 Q: What was he doing with it after that?
 
 
 12
 A: Bringing it back to Casper for distribution.
 
 
 13
 The minimum amount of drug based on this testimony--one pound every 10 days--adds up to a drug quantity of 36.5 pounds for 1989.
 
 
 14
 The district court made specific findings as to the drug quantities chargeable to Roberts. It considered evidence from the hearing and the trial. The evidence included testimony regarding numerous sales and distributions of specific drug quantities to Roberts and others. It concluded that the total drug quantity chargeable to Roberts was 199 ounces. This total was based on evidence regarding events largely occurring in 1990 and 1991. Turning to the drug quantity table in the Sentencing Guidelines, the court found that this amount corresponded to a base offense level of 34. The court also found that Roberts' offense level should be increased by four points since he was an organizer and leader, and that his appropriate criminal history category was II. The Sentencing Table in the Guidelines calls for a sentencing range of 262 to 327 months where the offense level is 38 and the criminal history category is II. The court imposed the minimum sentence of 262 months based on the Table.[1]
 
 
 15
 As we concluded with respect to co-defendants Byers and Wood, any errors in the court's fact findings regarding particular drug quantities used in determining the total drug quantity are harmless if they do not affect the base offense level chosen by the district court, since the offense level found and resulting sentence remain unchanged if these quantities are excluded. United States v. Deninno, 29 F.3d 572, 579 (10th Cir.1994). Under Sec. 2D1.1(c) of the Sentencing Guidelines, a base offense level of 34, which the district court applied, corresponds to a drug quantity of 3 to 10 kilograms of methamphetamine.
 
 
 16
 In addition to Deninno, we also find instructive the Supreme Court's analysis in Williams v. United States, 112 S.Ct. 1112 (1992). There the Court was faced with a different issue--whether a district court's upward departure from the guideline range should be affirmed when the district court relied on both valid and invalid factors. Id. at 1118. The Court's reasoning, which we think applicable here, was that even where a court of appeals finds that the district court misapplied the Sentencing Guidelines, "a remand is appropriate unless the reviewing court concludes, on the record as a whole, that the error was harmless, i.e., that the error did not affect the district court's selection of the sentence imposed." Id. at 1120-21.
 
 
 17
 Roberts takes issue with numerous specific fact findings of the district court regarding drug quantities attributed to him. For example, Roberts complains that the amounts of the drug represented by the cash seized or spent by Roberts in 1990 were double counted or even triple counted with other amounts. However, even if the court's fact findings regarding these particular quantities are clearly erroneous, and such amounts should be excluded from the total drug quantity, such errors are harmless if the amounts excluded do not change the base level offense. The base level offense of 34 applies to a quantity as low as 6.614 pounds. Yet if we agreed with any or all of Roberts' arguments, and remanded for resentencing, we would feel compelled to advise the district court that it could include the 36.5 pounds from 1989 described above. We conclude, based on a review of the record as a whole, that the sentence would not change except for the worse.
 
 
 18
 We are convinced that if invited to do so on resentencing, the district court would include the 36.5 pounds for 1989, and that the inclusion of such amount would be supported by the evidence. The district court plainly found the testimony of agent Hughes regarding the Roberts confession was reliable, since it relied on that testimony both times that it sentenced Roberts.[2] The court further made clear at the resentencing hearing, as explained above, that its reservations regarding the credibility of statements made by Roberts were limited to his testimony at the suppression hearing. We are further convinced that the district court felt constrained not to include the 1989 drug quantity only because our prior opinion might be read broadly to suggest that the calculation of drug quantity could not be based solely on Roberts' confession.[3] As explained above, our opinion should not be construed so broadly.
 
 
 19
 Roberts argues that the sentencing court should exclude drug amounts possessed for personal use. The authority cited, United States v. Kipp, 10 F.3d 1463, 1466 (9th Cir.1993), concluded that "failure to distinguish the amount possessed for personal use from the amount possessed for distribution contravenes a fundamental principle of the Sentencing Guidelines--proportionality in sentencing--because it would result in sentencing a drug user who possessed 50 grams for personal use and gave one gram away more harshly than a drug dealer who possessed 49 grams for distribution." Assuming that this approach is a sound one that we should follow, it does not alter our conclusion that the district court's drug quantity calculation is not clearly erroneous. Again, the court heard unrebutted testimony that Roberts purchased over 36 pounds of methamphetamine in 1989 alone. As little as 6.614 pounds would place Roberts in the base offense level the court used in arriving at its sentence. The record never established the amount of Roberts' personal drug use. Although Carolyn Roberts, his ex-wife, testified that he was addicted to methamphetamine and that she observed him using "massive amounts" of the drug, she did not quantify the amount he used. At the sentencing hearing, agent Hughes testified that he was generally familiar with the consumption habits of methamphetamine users and that daily consumption ranged from as little as a tenth of a gram a day to as much as a quarter ounce a day. Even at an uninterrupted pace of a quarter ounce a day, Roberts could only consume about 5.7 pounds a year.
 
 B. Enhancement as a Leader and Organizer
 
 20
 The district court again concluded that Roberts' offense category should be enhanced by four levels because he was an organizer and leader under U.S.S.G. Sec. 3B1.1(a). In the prior appeal we remanded the case for further findings, noting that the prior findings amounted to "a character sketch which does not assist our review," and that the court instead must make two findings before imposing the 4-level increase: "first, that the defendant is an organizer or leader; and, second, that the criminal activity involved five or more participants or was otherwise extensive." Roberts, 14 F.3d at 523. As to the second finding, we noted that factors the court should consider include the exercise of decision making authority, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, and the degree of control and authority exercised over others. Id.
 
 
 21
 On remand, the district court made written findings as well as findings from the bench regarding this issue. The court found that the criminal activity included Jackie Wood, Billy Joe Wood, Carolyn Roberts, Robyn Cantrell, Shawn Baruth, and Cindy Canfield. The court further found that Roberts "made calls, established the time and place of meetings, and directed others with regard to the conspiratorial activities," and that "[t]he financial needs of Roberts seemed to drive the transactions." The court made numerous ancillary findings relevant to this issue as well.[4] We conclude that the court made appropriate findings consistent with our prior opinion, and that such findings are not clearly erroneous.
 
 
 22
 C. Failure to Run Sentence Concurrently with State Sentence
 
 
 23
 Roberts complains that the district court erred in refusing to run the federal sentence concurrent with a Nevada state sentence. The state sentence was the result of a drug conviction in 1991. The government argues that this issue was waived for failing to present it at the initial sentencing and in the first appeal. We assume without deciding that the issue is properly before us.
 
 
 24
 Whether to impose a sentence concurrently or consecutively in these circumstances is left to the district court's sound discretion. United States v. Kadaly, 941 F.2d 1090, 1097 (10th Cir.1991). We find no abuse of discretion. We note that excluding the 2.25 ounces of methamphetamine seized in the Nevada incident would not change Roberts' offense level. Further, the district court agreed to "backdate" the sentence it imposed. According to the presentence report, the two-year state sentence was imposed on May 8, 1991, and expired on July 22, 1992. Our understanding of the district court's ruling is that the federal sentence was "backdated" so as to begin to run from the date his federal custody began, which according to the government is March 18, 1992.[5] The district court did, therefore, make the sentences concurrent to some extent, and Roberts fails to demonstrate that the court abused its discretion in failing to make the sentences fully concurrent.
 
 
 25
 AFFIRMED.
 
 
 
 *
 The Honorable Thomas M. Reavley,
 United States Court of Appeals, Fifth Circuit, sitting by designation.
 
 
 **
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order filed November 29, 1993. 151 F.R.D. 470
 
 
 [1]
 Roberts also received a consecutive 60 month sentence under 18 U.S.C. Sec. 924(c) for use of a firearm, but that sentence is not raised in this appeal
 
 
 [2]
 The court explained at the resentencing hearing that it relied "very heavily" on the Hughes testimony regarding the Roberts confession
 
 
 [3]
 Our conclusion finds support in the record of the resentencing hearing, where the district court stated:
 The Tenth Circuit Court of Appeals arrived at the position, I believe, based upon a reading of the opinion, that the uncorroborated admission of a defendant cannot be accepted standing alone--said it twice--to support a finding as to drug amount, and especially if it is a very substantial drug amount.
 Today, I would still find and do still find that Mr. Roberts voluntarily made a statement to Kevin Hughes that he--this activity resulted in the delivery of between 150 and 200 pounds of methamphetamine. There is no reason for me not to--or to discount the clear admission that was voluntarily made in February 1991 by the defendant, Kurlee Roberts.
 
 
 [4]
 For example, the court found that Billy Joe Wood "was an easy recruit and really subject to the control of a much respected uncle, Kurlee Roberts," and that the evidence as a whole "pointed to Roberts as the person who made the decisions."
 
 
 [5]
 Government brief at 30. If this date is incorrect, we direct the government to cooperate with Roberts in making the correct date known to appropriate prison officials